252 Ga. 493 (1984)
314 S.E.2d 881
LINDSEY
v.
THE STATE.
40474.
Supreme Court of Georgia.
Decided April 24, 1984.
Wright & Wright, G. Russell Wright, for appellant.
Gary C. Christy, District Attorney, Richard E. Thomas, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., for appellee.
SMITH, Justice.
On October 2, 1982, Slayton Lindsey and his wife Catherine were brutally stabbed to death. Their son, Jack Russell Lindsey, was charged with two counts of murder, convicted, and sentenced to death. He now appeals.[1] The issue which we find dispositive pertains to the determination of appellant's competence to stand trial. For reasons which follow, this case must be remanded to the trial court for further proceedings consistent with this opinion.
I. Statement of the Relevant Facts
On October 7, 1982, Frank Grimsley, then public defender for the Cordele judicial circuit, and G. Russell Wright were appointed to represent Lindsey. On November 15, they filed a motion for psychiatric examination, alleging in part that: "Said counsel are acquainted with the defendant and find him unable to coherently communicate with said counsel concerning the facts of the alleged crime for which he stands accused ... Defendant is not able to effectively assist in his defense." The trial court ordered that Lindsey undergo a psychiatric examination at Central State Hospital in Milledgeville to determine his competence to stand trial.
Lindsey had previously been committed to the West Georgia Central Regional Hospital on six different occasions since 1978. On *494 November 19, an evaluating team from this hospital was sent to the Crisp County jail to interview and evaluate Lindsey. However, Lindsey refused to talk to them, and they were unable to make an evaluation. Attorney Wright was contacted. When he arrived, Lindsey said to him, "R. H. McCard," and nothing else. Wright later testified that he did not know what Lindsey wanted, but since Wright knew that McCard was a private psychiatrist, he filed a motion for a private psychiatric examination. This motion was denied February 1, 1983.
On February 14, 1983, the defense was notified for the first time that the state intended to seek the death penalty. On February 25, the defense filed a special plea of mental incompetency. See OCGA § 17-7-130 (Code Ann. § 27-1502). The issue of competency was tried before a jury March 2 and 3.
Attorney Wright testified at this trial that he was virtually unable to discuss the case with Lindsey and that Lindsey had no reaction to Wright's suggestion of a psychiatric examination, or to the notification that a trial would be held on the issue of Lindsey's mental competence.
Lindsey's first cousin testified that on the Friday before the killings, Lindsey had told him: "I am the king of kings and they have to do exactly as I say because I'm the onliest one that can save them."
Dr. Otha Coleman testified that, on four occasions, he had issued, for Lindsey, emergency admission certificates for involuntary mental treatment. See OCGA § 37-3-41 (Code Ann. § 88-504.2). In each case, Dr. Coleman found Lindsey to be either psychotic or paranoid.[2]
Dr. Thomas Merritt testified that he evaluated Lindsey in August of 1980. He had reviewed a history which included behavioral problems dating back to age 12 and a recent release from a mental hospital conditioned upon follow-up treatment at a mental-health clinic and upon maintenance on the drug Haldol (which Dr. Merritt described as a drug used for the treatment of psychotic disorders). Based upon this history and upon his personal examination of Lindsey, Dr. Merritt had concluded in 1980 that Lindsey was a paranoid schizophrenic. He testified that paranoid schizophrenia is a psychotic illness, that its intensity could "wax and wane," and that drugs or emotional stress could easily induce psychosis in a paranoid *495 schizophrenic.
Dr. Merritt testified that he saw Lindsey again in February of 1982, at which time he prescribed for appellant the drug Navane, "which again is a fairly potent drug reserved usually for psychotic disorders."
On cross-examination, Dr. Merritt was asked by the state whether Lindsey's refusal to cooperate with a psychiatric evaluation would indicate "a person that may be using his head." Dr. Merritt answered, "No, it would indicate that he probably needed to be placed on a psychiatric ward for observations over [a] several-weeks period of time."
At the close of Lindsey's case, the state moved for a directed verdict in its favor. Over vigorous objection, the motion was granted, and Lindsey was pronounced competent to stand trial.
The guilt-innocence trial began March 10, 1983. In his opening statement, attorney Grimsley announced to the jury that it would hear considerable evidence of Lindsey's insanity and that Lindsey himself would "take the stand and tell you what happened that night as he sees it." However, Lindsey later refused to testify. Since his attorneys felt that other evidence they intended to offer would be useless without Lindsey's own testimony, the defense rested without presenting any evidence, at the guilt phase or the sentencing phase of trial. In compliance with Rule IV (B) (2) of the Unified Appeal Procedure (Code Ann. Ch. 85-2 Appendix), we have reviewed the evidence presented by the state and find that it meets the standard of Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
II. The Pre-Trial Evaluation of Lindsey's Competence
"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U. S. 162, 171 (95 SC 896, 43 LE2d 103) (1975). "[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." Id. at 172 (citing Pate v. Robinson, 383 U. S. 375 (86 SC 836, 15 LE2d 815) (1966)).
In this case, the original order for psychiatric examination contemplated a commitment to Central State Hospital in Milledgeville for observation and evaluation. For some reason not explained by the record before us, this order was not explicitly carried out; instead, an evaluating team[3] from the West Georgia Central *496 Regional Hospital in Columbus visited Lindsey at the Crisp County jail.
The defense contends that after the failure of the first attempt at evaluation, the court should have provided funds for an evaluation by a private psychiatrist.
The state responds that since an opportunity for a psychiatric evaluation was provided to Lindsey which was unsuccessful because of his utter refusal to talk to the evaluation team, Lindsey is now bound by that choice, i.e., "He can't have his cake and eat it, too." The difficulty with this contention is that it presumes either that Lindsey was competent or that he could be bound by a decision he made while incompetent.
We are inclined to think that the court might well have considered some middle ground between giving up after one attempt at evaluation at the county jail and employing at no small expense a private psychiatrist. Compare Alvord v. Wainwright, 725 F2d 1282 (11th Cir. 1984). However, while it is questionable whether the right to further inquiry upon the issue of competence could be waived, "it is nevertheless true that judges must depend to some extent on counsel to bring issues into focus." Drope v. Missouri, supra at 176-177. In view of our disposition of the issue addressed in Division III, post, we need not determine whether, on the basis of what was known to the court about Lindsey's mental condition, the court was constitutionally required to explore alternative means of securing an evaluation not suggested by trial counsel. See Lingo v. State, 224 Ga. 333 (4b) (162 SE2d 1) (1968).
III. The Directed Verdict on the Issue of Competence
The trial on the issue of mental competency contemplated by OCGA § 17-7-130 (a) (Code Ann. § 27-1502) is in the nature of a civil proceeding and the defendant has the burden to prove incompetency by a preponderance of the evidence. Baker v. State, 250 Ga. 187, 189 (297 SE2d 9) (1982). The issue raised is whether the defendant is capable of understanding the nature and object of the proceedings, whether he comprehends his own condition in reference to such proceedings, and whether he is capable of rendering his attorney assistance with his defense. Brown v. State, 215 Ga. 784, 787 (113 SE2d 618) (1960).
The state contends that a directed verdict in its favor was proper because no witness testified directly that Lindsey was incompetent at the time of trial while one witness, Sheriff Forrest, testified that Lindsey was competent, based upon his observations of Lindsey since his arrest and up to the time of the trial. The state notes, moreover, that the medical testimony presented was based upon observations many months prior to trial.
*497 However, a directed verdict is proper only where "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict ..." OCGA § 9-11-50 (a) (Code Ann. § 81A-50). (Emphasis supplied.) Thus, the question is not on whose behalf the evidence preponderates, it is whether a verdict is demanded as a matter of law. Shockey v. Baker, 212 Ga. 106, 108 (3) (90 SE2d 654) (1955).
Evidence was presented that, on numerous occasions, Lindsey had been committed to mental hospitals; that he had been diagnosed as "paranoid," "psychotic," and as a "paranoid schizophrenic"; that he had on more than one occasion been prescribed strong antipsychotic drugs; that he had refused to talk with his attorneys or to cooperate with an attempted psychiatric evaluation; and that he had no reaction to important news regarding a trial in which his life was at stake. The jury may well have deduced from the evidence as a whole that Lindsey was competent, but we cannot agree with the state that the evidence demanded such a finding, or that the issue should have been withdrawn from the jury.
Lindsey's first enumeration of error, in which he contends that the trial court erred by directing a verdict on the issue of competence to stand trial, is meritorious.
IV. The Remedy
This court has previously addressed the question of an appropriate remedy for a Pate v. Robinson violation or for an error under Georgia law regarding the competence of a defendant. Baker v. State, supra, 250 Ga. at 192-193. In accordance with Baker, we remand this case to the trial court to make, if possible, a determination of Lindsey's competence at the original trial.
"Upon remand the burden first falls upon the state to show there is sufficient evidence to make a meaningful determination of competency at the time of trial. If the court rules that a determination of appellant's competency at the time of his trial is not presently possible, then a new trial must be granted. If the court decides that such a determination is possible, the issue of competency to stand trial must be tried and the appellant shall have the burden to show incompetency by a preponderance of the evidence. The sole issue to be presented to the jury is that of mental incompetency; evidence as to guilt would be irrelevant. [Cit.] If the jury finds that the appellant was not mentally competent at the time of his trial, the verdict in the main case must be set aside. On the other hand, if the appellant fails by a preponderance of the evidence to prove incompetence at the time of his trial, the verdict of guilty shall stand.
"In the event the verdict of guilty is set aside and a new trial *498 ordered as to guilt and innocence, the appellant may again raise the issue of competency by special plea pursuant to [OCGA § 17-7-130 (Code Ann. § 27-1502)]." Baker v. State, supra at 193.
We will not presume that a determination of prior competence can be made, or, if it can be made, that a jury will determine that Lindsey was competent at the time of the previous trial. Therefore, we will not at this time review the remaining enumerations of error. If it is determined below that a new trial as to guilt and sentence is unnecessary, then, upon completion of the proceedings on remand, this case shall be re-presented to this court for resolution of the remaining issues and any additional issues that might be presented by the judgment on remand.
Remanded for further proceedings. All the Justices concur.
NOTES
[1] Appellant was sentenced March 15, 1983. His motion for new trial was filed April 13, 1983. It was amended August 8, 1983, and heard that day. The motion was denied September 9, 1983. Notice of appeal was filed and the case was docketed in this court on October 26, 1983. The case was argued January 10, 1984.
[2] The state contends that Dr. Coleman testified on cross-examination that Lindsey was not insane or incompetent. We disagree. Our review of the transcript persuades us that Dr. Coleman merely agreed with the state that not everyone "that ever does a violent act or threatens another person would be incompetent or insane."
[3] The record does not show the number or identity of persons in the "team."