## S91P1120. LYND v. THE STATE.
### (414 SE2d 5)

HUNT, Justice.

William Earl Lynd was convicted in Berrien County of kidnapping with bodily injury and murder and sentenced to death. He appeals. We affirm.[1]

1. Lynd and the victim lived together in her home in Berrien County. Following an argument three days before Christmas of 1988, Lynd shot the victim in the face and went outside to smoke a cigarette. The victim regained consciousness and followed him outside. Lynd shot her a second time, put her into the trunk of her car and drove away. Hearing the victim "thumping around" in the trunk, Lynd got out, opened the trunk and shot the victim a third time, killing her.

Lynd returned home, cleaned up the blood, and drove to Tift County, where he buried the victim in a shallow grave. He then drove

---

[1] The crime occurred December 22 or 23, 1988. The defendant was arrested on December 31, 1988. He filed a special plea of incompetence, which was tried before a jury on October 23 through 25, 1989. Having been found competent to stand trial, the trial of the case-in-chief began on February 19, 1990 and concluded on February 27, 1990. A motion for new trial was filed the next month and denied after hearing on March 5, 1991. The case was docketed in this court on May 16, 1991, and argued orally on September 11, 1991.

to Ohio. Lynd shot and killed another woman in Ohio and then sold the gun he used to kill her and the victim in this case. Eventually, Lynd returned to Georgia to surrender to Berrien County authorities. The murder weapon was recovered and identified by ballistics examination, and the victim's body was located based on information provided by Lynd.

The evidence supports the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The denial of sequestered voir dire was not an abuse of discretion. *Sanborn v. State*, 251 Ga. 169 (3) (304 SE2d 377) (1983). There was no denial of individual voir dire. *State v. Hutter*, 251 Ga. 615 (307 SE2d 910) (1983).

3. The record supports the trial court's conclusion that the defendant could receive a fair trial in Berrien County and that a fair and impartial jury was selected in this case. There was no error in the denial of the defendant's motion for change of venue. *Isaacs v. State*, 259 Ga. 717 (15) (386 SE2d 316) (1989).

4. "A trial court retains the discretion to determine how late to hold court before recessing for the evening." *Spencer v. State*, 260 Ga. 640, 647 (9) (398 SE2d 179) (1990). Lynd has not shown that the trial court maintained an "oppressive" trial schedule which left defense counsel insufficient time to review each day's proceedings or to prepare for the next.

5. The trial court did not err by excusing for cause a prospective juror who testified he was opposed to the death penalty and could not vote for a death sentence in any case regardless of the evidence. *Alderman v. State*, 254 Ga. 206 (4) (327 SE2d 168) (1985).

6. Nor did the court err by refusing to disqualify another prospective juror for pro-death penalty bias. Although the juror was somewhat confused by the initial questions about the death sentence, the juror ultimately testified that he could consider and possibly vote for a life sentence after hearing all the evidence, and that he would "not just automatically" vote for a death sentence in the event the defendant was convicted. The trial court was authorized to conclude that the juror's views would not " ' "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." ' [Cits.]" *Alderman v. State*, supra. Compare *Pope v. State*, 256 Ga. 195 (7 e) (345 SE2d 831) (1986).

7. In the final enumeration of error of his original brief, Lynd contends the evidence fails to support the jury's findings of statutory aggravating circumstances. The jury found:

(1) The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: kidnapping with bodily injury [see OCGA § 17-10-30 (b)

(2)].

(2) The offense of murder was committed while the offender was engaged in the commission of an aggravated battery. [See ibid.]

Lynd argues he did not commit the offense of kidnapping with bodily injury because the victim was unconscious after the second shot. However, even if we were to accept the untenable assumption the victim could not have been taken "against her will," see OCGA § 16-5-40 (a) (defining kidnapping), if she were unconscious the entire time, see *Taylor v. State*, 194 Ga. App. 871 (2) (392 SE2d 57) (1990), the evidence is persuasive that she regained consciousness and vigorously protested her confinement in the trunk of her car before Lynd shot her a third time and killed her.

As to the aggravated battery finding, the evidence shows that Lynd seriously disfigured the victim with his first shot beneath her left eye. See OCGA § 16-5-24 (defining aggravated battery).

The evidence supports the jury's findings of statutory aggravating circumstances. OCGA § 17-10-35 (c) (2).

8. Over two months after this case was argued orally to this court, Lynd filed a "supplemental brief" raising and arguing eight additional enumerations of error not raised or argued previously. The Attorney General has moved to exclude these supplemental enumerations as untimely, relying on *Cohran v. Carlin*, 254 Ga. 580 (1 a) (331 SE2d 523) (1985), which holds that "[a]rguments asserted for the first time in a post-oral argument brief are untimely, and will not be considered." Id. at 584.

Our Georgia Unified Appeal Procedure states:

> The Supreme Court shall review each of the assertions of error timely raised by the defendant during the proceedings in the trial court regardless of whether or not an assertion of error was presented to the trial court by motion for new trial, and regardless of whether error is enumerated in the Supreme Court. However, except in cases of plain error, assertions of error not raised on appeal shall be waived."

[UAP, § IV (B) (2).]

If assertions of error "not raised" are waived, it follows that assertions of error not *timely* raised are also waived. Because there may have been some reasonable question about the applicability of the *Cohran v. Carlin* rule to death penalty cases, we will not apply it to this case, and we therefore deny the Attorney General's motion to exclude. See *Ford v. State*, 257 Ga. 661, 665 (362 SE2d 764) (1987) (Gregory, J., dissenting). In the future, however, except in cases of

"plain error,"[2] enumerations of error not timely raised and/or argued shall be waived.

9. Initially, an attorney was appointed for the defendant. Soon thereafter, the defendant retained an attorney to represent him. At a hearing on March 24, 1989, the trial court questioned the two attorneys about their experience and qualifications. The retained attorney testified that he had graduated from law school in 1986 and had been admitted to the Georgia bar in September of 1987. He had maintained a law office and a full-time practice in the year and a-half since being admitted to the bar. He testified that although he had handled "probably" 25 criminal cases, he had actually tried only one felony case before a jury. This was his first death-penalty case.

The appointed attorney had been admitted to the bar for a little longer than six months and had not tried any cases before a jury.

After questioning these two attorneys, the trial court told Lynd it was troubled by his attorneys' lack of experience. As a consequence, notwithstanding that Lynd had expressed his satisfaction with his two attorneys, the court was going to require Lynd either to retain a more experienced attorney (in addition to or in lieu of his present retained attorney) or — if he could not afford to do that — to accept the appointment of a more experienced attorney to act as lead counsel in the case.

At the next hearing, on May 19, 1989, the court announced for the record that Lynd's original appointed attorney had been "relieved of any further responsibility in this case" and that another, more experienced attorney had been appointed by the court to represent the defendant and to act as lead counsel. Although he had been satisfied with his previous court-appointed attorney, Lynd now objected to the appointment of a "government-paid" attorney to represent him. According to his retained attorney, Lynd had been in "trouble in a lot of states, had a lot of trouble with the government, and he just does not trust a court-appointed attorney."

Late in July, the defendant told the court he was financially "capable now of hiring my own attorney," and asked the court to relieve his appointed attorney. However, when the court asked Lynd whom he intended to retain, Lynd stated he had only become "aware" of his new resources the previous evening and had not yet contacted any attorneys. The court declined to relieve Lynd's appointed attorney at that time, stating Lynd could not "just take lawyers on and off" and "drag" the case on for years. Later (hearing of August 25, 1989 at p.

---

[2] "Plain error" is that which is "so clearly erroneous as to result in a likelihood of a grave miscarriage of justice" or which "seriously affects the fairness, integrity or public reputation of a judicial proceeding." *United States v. Fuentes-Coba*, 738 F2d 1191, 1196 (11th Cir. 1984).

5), when the defendant again claimed he could retain an additional attorney,[3] the court ruled that the appointed attorney

> is going to stay on the team until such time as I see who this attorney is. And if such attorney that's employed is [sufficiently capable and experienced] . . . then at such time, I will remove [the appointed attorney].

The defendant, however, never retained any additional attorneys, and was represented at trial by the appointed attorney as lead counsel and by his retained attorney as associate counsel.

(a) Lynd contends he was denied his 6th Amendment right to retain and be represented by the attorney of his own choosing.

A criminal defendant who is financially able to retain the services of an attorney has a constitutional right under the Sixth Amendment to "secure counsel of his own choice." *United States v. Friedman*, 849 F2d 1488, 1490 (D. C. Cir. 1988). However, "[t]his does not mean that a defendant may retain any counsel at any time he wishes; there are limits to a defendant's right to counsel of choice." *United States v. Campbell*, 874 F2d 838, 848 (1st Cir. 1989). A defendant's right to counsel may not "be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same." *United States v. Burton*, 584 F2d 485, 489 (D. C. Cir. 1978). Moreover,

> while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. [*Wheat v. United States*, 486 U. S. 153, 159 (108 SC 1692, 100 LE2d 140) (1988).]

A trial court therefore has the responsibility to

> balance a defendant's constitutional right to retain counsel of his choice against the need to maintain the highest standards of professional responsibility, the public's confidence

---

[3] The defendant had earlier filed an "affidavit of poverty" claiming he had no assets and no income.

in the integrity of the judicial process and the orderly administration of justice. [*United States v. Collins*, 920 F2d 619, 626 (10th Cir. 1990).]

The trial court in this case fulfilled this responsibility. While the defendant's retained attorney was not presumptively incompetent to represent a defendant in a death-penalty jury trial, see *United States v. Cronic*, 466 U. S. 648 (104 SC 2039, 80 LE2d 657) (1984), his inexperience was justifiably a matter of concern in a case sufficiently more complicated than the run-of-the-mill criminal trial to give pause even to far more experienced attorneys. Claims of ineffectiveness are routine in death-penalty cases, and not the less so in cases in which trial counsel was retained rather than appointed. See, e.g., *Black v. State*, 261 Ga. 791 (19) (410 SE2d 740) (1991); *Hammond v. State*, 260 Ga. 591 (10) (398 SE2d 168) (1990); *Ross v. Kemp*, 260 Ga. 312 (393 SE2d 244) (1990); *Cook v. State*, 255 Ga. 565 (17) (340 SE2d 843) (1986). Given the serious potential for a post-trial claim of ineffectiveness resulting from retained counsel's almost total lack of criminal trial experience, the trial court acted within its discretion to require the defendant either to retain a more experienced attorney or accept the appointment of one.

(b) The defendant argues that he was not "allowed" to retain an additional attorney "although he was willing to go that far." We disagree. Although Lynd stated to the court that he was willing and able to retain an additional attorney, he never did so. The trial court did not err by insisting that the appointed attorney remain on the case until such time as Lynd retained an additional attorney and presented him to the court.

(c) Lynd also argues that the attorney appointed by the court was laboring under a conflict of interest. Years previously, the appointed attorney had represented the victim's ex-husband in "a bankruptcy or something." The attorney testified that he likely had represented the victim also, but he could not remember her. The victim's husband presently resides in Melbourne, Florida, according to the record, and did not testify in this case. The appointed attorney stated to the court that he was merely bringing the matter to the court's attention. Neither he nor the retained attorney suggested to the court how there was either an actual or serious potential for a conflict of interest. See *Mitchell v. State*, 261 Ga. 347 (405 SE2d 38) (1991).

(d) Finally, Lynd argues that the court's appointment interfered with retained counsel's independent decisions about how to conduct the defense. Of course, it is to be expected that the appointment of a lead counsel would diminish to some extent the right of retained counsel to make "independent" decisions about how to conduct the defense. But all Lynd can demonstrate is that the trial court refused

to allow his retained attorney "to object anytime I want to." A trial court acts well within its discretion when it requires that only one of two or more co-counsel conduct the examination of each witness, including interposing objections during the opposing party's examination of the witness. Cf. *Isaacs v. State*, 259 Ga. 717, 731 (24) (386 SE2d 316) (1989).

10. "[T]he sheriff is an officer of the court, and may be excepted from the rule [of sequestration of witnesses] on the court's own initiative. [Cits.]" *Childs v. State*, 257 Ga. 243, 251 (11) (357 SE2d 48) (1987). The record does not show that any of the jury bailiffs were trial witnesses. Compare *Turner v. Louisiana*, 379 U. S. 466 (85 SC 546, 13 LE2d 424) (1965).

11. The trial court did not err by excluding testimony of the defendant's mental health experts where the defendant refused to submit to an examination by mental health experts chosen by the state. *Motes v. State*, 256 Ga. 831, 832 (353 SE2d 348) (1987); *Strickland v. State*, 257 Ga. 230, 233 (357 SE2d 85) (1987). Such an exclusion is justified "by the State's overwhelming difficulty in responding to the defense psychiatric testimony without its own psychiatric examination of the accused and by the need to prevent fraudulent mental defenses." *Battie v. Estelle*, 655 F2d 692, 702 (5th Cir. 1981). A criminal defendant can no more present psychiatric testimony without submitting to an examination by a state-selected psychiatrist than he may testify at trial without submitting to a cross-examination.[4]

12. Less than two days after Lynd killed the victim in this case, he was in southern Ohio, still driving the victim's car. Using the same gun he used to kill the victim in this case, he shot and killed a woman in Ohio. He pawned the murder weapon in nearby Huntington, West Virginia, and drove to Texas, where he abandoned the victim's car. Lynd contends the extrinsic homicide should not have been admitted in evidence. See OCGA § 24-2-2. We disagree. The Ohio homicide and the instant homicide "were part of a continuous course of conduct, closely connected in time . . . and manner of commission." *Putman v. State*, 251 Ga. 605, 608 (2) (308 SE2d 145) (1983). It was as a consequence of the Ohio homicide investigation that the murder weapon was recovered. Moreover, evidence concerning this crime was strong evidence of the defendant's state of mind at a relevant time, and tended to rebut his contention that the homicide on trial was the result of the defendant's sudden heat of passion resulting from serious provocation. OCGA § 16-5-2 (defining voluntary manslaughter). This

---

[4] We note that, according to the defendant's evaluation by his own experts (sealed by order of the trial court and included in the record on appeal), the defendant was competent to stand trial and was not insane at the time of the crime. Cf. *Lindsey v. State*, 252 Ga. 493 (II) (314 SE2d 881) (1984).

evidence was properly admitted. *Ingram v. State*, 253 Ga. 622, 632-634 (6) (323 SE2d 801) (1984); *Todd v. State*, 261 Ga. 766 (7) (410 SE2d 725) (1991).

The relevance of a previous incident in Tifton in which the defendant kidnapped and sexually assaulted another woman is less obvious; however, we conclude that any error in the admission of this testimony at the guilt phase of the trial was harmless in view of the overall strength of the evidence.

13. Extrinsic-offense evidence was not inadmissible simply because the defendant had not at the time of this trial been convicted of the extrinsic offenses. *Hammond v. State*, 260 Ga., supra at (6). All of the extrinsic-offense evidence was properly considered at the sentencing phase of the trial. OCGA § 17-10-2; *Hicks v. State*, 256 Ga. 715 (19) (352 SE2d 762) (1987).

14. The prosecutor's proffered explanations for peremptorily striking three black prospective jurors at the competency trial were sufficient to rebut any reasonable inference of racial discrimination. *Hall v. State*, 261 Ga. 778 (2) (415 SE2d 158) (1991).[5]

15. The trial court's instructions on "reasonable doubt" were not erroneous. *Potts v. State*, 261 Ga. 716 (14) (410 SE2d 89) (1991).

16. We find that the sentence of death was not imposed as the result of passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). The sentence of death is not excessive or disproportionate to sentences imposed in similar cases, considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the imposition of a death sentence in this case.

*Judgment affirmed. Clarke, C. J., Weltner, P. J., Bell and Fletcher, JJ., concur; Benham, J., concurs specially.*

### APPENDIX.

*Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Childs v. State*, 257 Ga. 243 (357 SE2d 48) (1987); *Alderman v. State*, 254 Ga. 206 (327 SE2d 168) (1985); *Wilson v. State*, 246 Ga. 62 (268 SE2d 895) (1980); *Redd v. State*, 242 Ga. 876 (252 SE2d 383) (1979).

BENHAM, Justice, concurring specially.

Though I agree with the majority opinion's affirmance of appellant's murder conviction and death sentence, I write separately to shed more light on the issue of challenges to venirepersons under *Witherspoon v. Illinois*, 391 U. S. 510 (88 SC 1770, 20 LE2d 776)

---

[5] The prosecutor struck one juror because he had information that the juror was a drug dealer, another because he had prosecuted the juror's son, and the third because her husband was the target of an ongoing criminal investigation.

(1968).

Appellant contends the trial court erred in excusing one juror who had reservations as to his ability to impose the death penalty and in retaining another juror who expressed support for the death penalty. The majority opinion correctly states the rule as to how *Witherspoon* and "reverse-*Witherspoon*" issues are to be handled. Majority opinion, Divisions 5 and 6. However, I write separately to focus attention on the need for trial courts to give as much attention to "reverse-*Witherspoon*" challenges as that given to *Witherspoon* challenges. In the case-in-chief, appellant contends there are some structural imbalances in the present approach which allow the trial court to weed-out jurors with qualms about the death penalty and weed-in jurors who were prone to impose the death penalty. While the majority opinion, with which I agree, finds that the trial court's treatment of the matter was even-handed, we must continue to bring to the attention of trial courts the need to expend an equal amount of effort in rehabilitating jurors with qualms about imposing the death penalty as is expended in rehabilitating jurors who are death-prone.

Both the United States Constitution and the Georgia Constitution guarantee the right to a jury made up of a cross-section of the community. Sixth and Fourteenth Amendments to the United States Constitution; 1983 Ga. Const., Art. I, Sec. I, Par. XI. Therefore, trial courts, in carrying out their obligations under Uniform Superior Court Rule 10.1, should endeavor to include rather than exclude jurors who have responded to the call to serve. Under *Witherspoon*, as modified by *Wainwright v. Witt*, 469 U. S. 412 (105 SC 844, 83 LE2d 841) (1985), considerable attention has been focused on the need to challenge for cause those veniremen who cannot abide by the oath and instructions and impose the death penalty when the circumstances warrant. Unfortunately, an equal amount of attention has not been given to the need to assure that the jury is not composed only of death-prone jurors. To have such a constituted jury would be fundamentally unfair.

DECIDED FEBRUARY 27, 1992 —
RECONSIDERATION DENIED MARCH 18, 1992.

*Roger E. Douglas, J. Reese Franklin, Clyde W. Royals,* for appellant.

*Robert B. Ellis, Jr., District Attorney, Michael J. Bowers, Attorney General, Mary H. Hines, Staff Attorney,* for appellee.