[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-11374

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 28, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 01-00095-CV-HL

WILLIAM EARL LYND,

Petitioner-Appellant,

versus

WILLIAM TERRY, Warden,
Georgia Diagnostic Prison,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(November 28, 2006)

Before EDMONDSON, Chief Judge, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

William Earl Lynd appeals from the denial of his petition, under 28 U.S.C.

§ 2254, for habeas corpus relief.  Pursuant to 28 U.S.C. § 2253(c)(1)(A), we review

on appeal the two issues specified in the Certificate of Appealability ("COA").

First, we review whether Lynd was deprived of his right to assistance from

necessary and competent experts at his competency trial and at both phases of his

capital trial. Second, we review whether Lynd was denied effective assistance of

counsel because: (1) his retained counsel unreasonably advised him not to

cooperate with a state mental health evaluation; (2) his counsel failed to conduct an

investigation into Lynd's background, including his mental health and substance

abuse problems; (3) his counsel failed to investigate adequately the State's case;

and (4) his court-appointed counsel had a conflict of interest.

## I. Background

The facts of the crime are described by the Georgia Supreme Court

as follows:

> Lynd and the victim [Virginia "Ginger" Moore] lived together in
> her home in Berrien County. Following an argument three days
> before Christmas of 1988, Lynd shot the victim in the face and
> went outside to smoke a cigarette. The victim regained
> consciousness and followed him outside. Lynd shot her a second
> time, put her into the trunk of her car and drove away. Hearing the
> victim "thumping around" in the trunk, Lynd got out, opened the
> trunk and shot the victim a third time, killing her.

Lynd returned home, cleaned up the blood, and drove to Tift County, where he buried the victim in a shallow grave. He then drove to Ohio. Lynd shot and killed another woman in Ohio and then sold the gun he used to kill her and the victim in this case. Eventually, Lynd returned to Georgia to surrender to Berrien County authorities. The murder weapon was recovered and identified by ballistics examination, and the victim's body was located based on information provided by Lynd.

Lynd v. State, 414 S.E.2d 5, 7 (Ga. 1992).

Lynd was convicted of murder, in violation of O.C.G.A. § 16-5-1, and kidnapping with bodily injury, in violation of O.C.G.A. § 16-5-40(b). He was sentenced to death for the murder, and given a life sentence for the kidnapping. His conviction and sentences were affirmed on direct appeal. Lynd, 414 S.E.2d at 5. The Supreme Court of the United States denied certiorari. Lynd v. Georgia, 506 U.S. 958 (1992).

Lynd then filed a state petition for a writ of habeas corpus pursuant to O.C.G.A. §§ 9-14-40 et seq., which was denied after an evidentiary hearing. The Supreme Court of Georgia denied Lynd's application for appeal and his motion for reconsideration and the Supreme Court of the United States denied certiorari and his petition for rehearing. Lynd v. Turpin, 533 U.S. 921 (2001); Lynd v. Turpin, 533 U.S. 971 (2001).

3

Lynd next filed the instant federal habeas petition, raising twenty-three grounds for relief.[1] The district court denied each of Lynd's claims, finding some to be procedurally barred and others to be meritless.[2] Lynd v. Terry, No. Civ.A.7:01CV95 (HL), 2005 WL 2877690 (M.D. Ga. Oct. 31, 2005). We address only the two claims for which the district court issued a COA.

## II. Denial of the Use of Expert Mental Health Testimony

Lynd argues that he was deprived of his right to the assistance of necessary and competent mental health experts, and that the trial court's exclusion of available mental health testimony from his competency trial and from both phases

---

[1] Lynd also filed a "Motion for Leave to Conduct Discovery and Authorization and Payment of Necessary Expert and Investigative Services," in which he requested funds for an expert investigator, a pathologist, a crime scene reconstruction expert, a mental health expert, a media content analyst, and a social psychologist. In separate motions, Lynd requested an evidentiary hearing and oral argument. Although the district court denied these motions, it noted that the COA should include the ancillary issues of the denial of Lynd's requests for discovery and an evidentiary hearing, and to hold the proceedings in abeyance.

[2] The district court found that sixteen of Lynd's claims were defaulted because Lynd failed to brief them, and that two other claims were defaulted for other reasons. In addition to the two claims that were certified on appeal, the district court rejected three more claims on the merits:
> 1. The trial court's refusal to allow Petitioner to retain and be represented by counsel of his own choosing, and the trial court's continual interference with counsels' division of responsibility, violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
> 2. The trial court's instructions to the jury in the guilt/innocence phase of Petitioner's trial violated Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.
> 3. The State withheld material exculpatory evidence and presented false and misleading testimony in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the analogous provisions of the Georgia Constitution.

See Lynd v. Terry, No. Civ.A.7:01CV95 (HL), 2005 WL 2877690 (M.D. Ga. Oct. 31, 2005).

of his capital trial violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights under the United States Constitution. The district court treated this claim as asserting two separate grounds for relief. We address each ground in turn.

First, Lynd argues that he was deprived of his right to the assistance of necessary and competent experts in violation of Ake v. Oklahoma, 470 U.S. 68 (1985). In Ake, the Supreme Court held that "when a defendant demonstrates . . . that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Id. at 83; see also Conklin v. Schofield, 366 F.3d 1191, 1206 (11th Cir. 2004) (setting forth elements of an Ake claim).

Lynd's counsel requested and received the appointment of an expert witness. Ultimately, for reasons discussed below, the trial court excluded the expert's testimony. Lynd argues that this exclusion constituted a de facto denial of his request for expert assistance, and that such denial rendered the trial fundamentally unfair.

We may not consider the merits of this argument here because Lynd failed to raise it on direct appeal in the state courts. The first time Lynd raised his Ake claim was in his state habeas petition. Under Georgia law, a petitioner's "failure to

5

. . . pursue [an issue] on appeal ordinarily will preclude review by writ of habeas corpus," unless the petitioner can show either "adequate cause" for his failure to pursue the issue and "actual prejudice," or that a miscarriage of justice, caused by a substantial denial of constitutional rights, will occur. Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985). Because Lynd failed to raise his Ake claim on direct appeal, the state habeas court found that Black precluded review. The state habeas court also found that Lynd failed to establish that he qualified for an exception to the procedural bar.[3] Accordingly, the state habeas court dismissed the claim as procedurally barred by a rule of state law. See Bailey v. Nagle, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (Procedural default arises when "the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred.").

A procedural bar precludes federal review when it provides an adequate and independent state ground for denial of a claim.[4] See Harris v. Reed, 489 U.S. 255,

---

[3] Specifically, the state habeas court found that Lynd failed to make the requisite showing of adequate cause and actual prejudice to justify his failure to pursue the claim on direct appeal, and failed to establish that a miscarriage of justice would occur if the habeas court did not review the claim.

[4] To determine whether a state procedural bar constitutes an independent and adequate state rule of decision, the last state court rendering judgment must clearly and expressly state that it is relying on a state procedural rule to resolve the federal claim, must not decide the claim on the merits, and must base its decision entirely on an "adequate" state procedural rule. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). An adequate rule is one that is firmly established and regularly followed – that is, not applied in an arbitrary or unprecedented fashion. Id. Lynd has presented no evidence, nor made any argument, that the state habeas court applied Black's

262 (1989); <u>Upshaw v. Singletary</u>, 70 F.3d 576, 579 (11th Cir. 1995). Because the state habeas court found that these claims are procedurally barred, this Court cannot review the merits of Lynd's <u>Ake</u> claim unless he qualifies for at least one exception to the procedural bar.

A federal habeas petitioner may still obtain federal review of a claim that has been procedurally barred if he can demonstrate either (1) "cause for the [procedural] default and actual prejudice as a result of the alleged violation of federal law," or (2) that the court's "failure to consider the [federal] claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991). Lynd fails to address either of these possibilities. He has not shown cause for his failure to raise the <u>Ake</u> claim on direct appeal; nor has he shown any actual prejudice. Further, he has not established that this Court's failure to consider the <u>Ake</u> claim will result in a fundamental miscarriage of justice. Therefore, this Court is precluded from reviewing Lynd's <u>Ake</u> claim on the merits.

Lynd's second ground for relief within Claim One is that the state trial court violated his constitutional right to present witnesses in his own defense when, due to Lynd's refusal to submit to a state mental health evaluation, the court excluded

procedural rule in an inconsistent or unfair manner. In his brief, Lynd simply states that the <u>Ake</u> issue was "both factually and legally raised" on direct appeal, without any citation or argument to support the statement.

his mental health expert testimony from his competency trial and both phases of his capital trial. Lynd argues that this exclusion was improper because it could have provided mitigating information relevant to both his state of mind at the time of the crime and his ultimate sentence.

When a state trial court's evidentiary rulings violate a habeas petitioner's fundamental constitutional right to present witnesses in his own defense, a federal court must grant the petition. Faretta v. California, 422 U.S. 806, 818 (1975) (identifying "the calling and interrogation of favorable witnesses" as a constitutional right "basic to our adversary system of justice"); United States v. Hurn, 368 F.3d 1359, 1363-66 (11th Cir. 2004); Boykins v. Wainwright, 737 F.2d 1539, 1544 (11th Cir. 1984). However, a defendant's right to present witnesses is not unlimited. A state trial court has wide discretion in determining whether to admit evidence at trial, and may exclude material evidence when there is a compelling reason to do so. Boykins, 737 F.2d at 1543-44. A defendant's refusal to submit to an evaluation by a state expert, based on his own choice and not on the advice of ineffective counsel, may provide a compelling reason to exclude the defendant's expert testimony, even when the testimony is material. See, e.g., Estelle v. Smith, 451 U.S. 454, 465 (1981) (stating in dicta that "[w]hen a defendant asserts the insanity defense and introduces supporting psychiatric

8

testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case.").[5]

In denying this claim on direct appeal, the Georgia Supreme Court held that "the trial court did not err by excluding testimony of the defendant's mental health experts where the defendant refused to submit to an examination by mental health experts chosen by the state." Lynd, 414 S.E.2d at 11. The state trial record indicates that Lynd refused to be interviewed by the state's expert on four separate occasions. Lynd testified in a pretrial hearing on October 5, 1989 that he would not speak with the state expert because he believed the expert had lied to him. On May 5, 1997, the state habeas court conducted an evidentiary hearing, at which Lynd's trial counsel testified, and found that "it was the Petitioner's refusal to be examined by the State's mental health professionals [and not his counsel's advice] that led to the exclusion of any mental health evidence regarding Petitioner's mental state and culpability."

Because the Georgia Supreme Court denied this claim on the merits, and the state habeas court made factual findings concerning this claim, we must evaluate

---

[5] We use the word "may" because there is no clearly established federal law on this issue. When there is only Supreme Court dicta addressing a particular question, a state court's conclusion cannot be contrary to clearly established federal law. Williams v. Taylor, 529 U.S. 362, 412 (2000) (holding that dicta in a United States Supreme Court opinion does not constitute clearly established federal law); Henderson v. Haley, 353 F.3d 880, 890 n.15 (11th Cir. 2003) (internal citations omitted).

9

whether those rulings were either "contrary to, or involved an unreasonable application of, clearly established Federal law," as determined by the United States Supreme Court, or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). An independent review of the record indicates that there were sufficient facts to support the state habeas court's findings that Lynd refused a state evaluation for reasons unrelated to his counsel's advice. We cannot say that those findings were unreasonable. Nor can we say that the Georgia Supreme Court's ruling was contrary to federal law or an unreasonable determination of the facts. Accordingly, we deny this claim.

### III. Ineffective Assistance of Counsel

Lynd's second claim is that he was denied effective assistance of counsel. Specifically, he argues that: (1) his retained counsel unreasonably advised him to refuse examination by a state mental health expert, resulting in the exclusion of defense expert testimony; (2) his trial counsel failed to investigate reasonably Lynd's background, mental health, and substance abuse problems, which could have revealed evidence providing support for a lesser conviction and sentence; (3) his trial counsel failed to investigate sufficiently the State's case, particularly medical testimony concerning the timing of the victim's death and the victim's

10

ability to regain consciousness after being shot; and (4) his court-appointed counsel had a conflict of interest because he had previously represented the victim and her ex-husband in an unrelated bankruptcy proceeding.

For a petitioner to establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), he must show (1) that counsel's performance was deficient and (2) that the deficiency prejudiced him. Id. at 687. Counsel's conduct is deficient when it falls "below an objective standard of reasonableness, " Chandler v. United States, 218 F.3d 1305, 1312 (11th Cir. 2000), in that it is "outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690. To establish prejudice, there must be a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The state habeas court held an evidentiary hearing on these issues on May 5, 1997, and ruled against Lynd on the merits. In reviewing this holding, we must determine whether the state court applied Strickland to the facts of the case in an objectively unreasonable manner or whether clear and convincing evidence compels the conclusion that its factual findings were unreasonable. Crawford v. Head, 311 F.3d 1295, 1311 (11th Cir. 2002).

11

<u>A. Counsel's Advice Concerning Lynd's Submission to State Evaluation</u>

Lynd claims that his retained counsel was ineffective because he advised Lynd to refuse to submit to a state mental health evaluation. He argues that this conduct was unreasonable because Lynd's mental health was at issue during the trial and sentencing and his failure to submit to the evaluation resulted in the prejudicial exclusion of his expert testimony. <u>See</u> <u>Scott v. Wainwright</u>, 698 F.2d 427, 429 (11th Cir. 1983) (holding that defense counsel "must be familiar with the facts and the law in order to advise the defendant of the options available" such that the advice is "within the realm of competence demanded of attorneys representing criminal defendants") (citations omitted).

As discussed above, at a pretrial hearing on October 5, 1989, Lynd testified that he would not submit to a state evaluation because he did not want to speak with the state expert. He believed the expert lied about what he said during a previous interview and did not want the expert to distort anything else he said. At the May 5, 1997 evidentiary hearing, Lynd's retained counsel stated, for the first time in the course of the proceedings, that he advised Lynd not to submit to a state expert evaluation because he believed the state trial court incorrectly denied Lynd a defense expert and "until [Lynd] got one there was no sense in giving [the State] the evaluation." Based on the foregoing testimony, the state habeas court found

that Lynd did not want to speak with the state expert because he did not trust him and that Lynd decided, of his own accord and apart from any advice given by counsel, to refuse to submit to an evaluation. Therefore the reasonableness of counsel's advice was immaterial. A review of the record indicates that the evidence supports the state habeas court's finding that Lynd did "not [make] the requisite showing that trial counsel's performance was inadequate." Therefore, we cannot find that the state court applied Strickland to this case in an objectively unreasonable manner or made an unreasonable factual finding in light of the evidence presented in the state court proceedings.

### B. Counsel's Failure to Investigate Lynd's Background

Lynd also claims that his trial counsel was ineffective for failing to conduct a reasonable investigation into Lynd's background, mental health, and substance abuse problems. Such an investigation, Lynd argues, would have yielded mitigating evidence relevant to both the guilt and sentencing phases of the trial.

A counsel's decision not to investigate and develop favorable evidence must be reasonable and fall within the range of professionally competent assistance. Strategic choices to forego further investigation into an issue are not deficient when a reasonable professional judgment based on a sufficient initial inquiry supports the decision to terminate the investigation. Strickland, 466 U.S. at

13

690-91. When counsel "totally fails to inquire into the defendant's past or present behavior or life history" in a capital case, his conduct is deficient. Housel v. Head, 238 F.3d 1289, 1294 (11th Cir. 2001); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995) (holding that representation is beneath standards of professional competence where counsel does not conduct sufficient investigation to formulate an adequate life profile of a defendant).

The state habeas court concluded that Lynd did not establish that his attorneys' conduct was deficient because his counsel adequately investigated his life history. In reaching this conclusion, the state habeas court found that Lynd had "not shown what further investigation could have been done by trial counsel which would have uncovered 'important evidence.'" A review of the record indicates that counsel asked for, and ultimately received, a mental health expert witness who interviewed Lynd several times and prepared reports detailing his mental health issues, substance abuse problems, and background. Lynd's counsel also interviewed many lay witnesses to testify on Lynd's behalf at trial and sentencing on such topics as his relationship with the victim, his drug abuse, and his qualities as a person. Counsel also hired a private investigator and sent letters to schools, hospitals, the military, and other institutions with which Lynd had contact.

14

We find that the state habeas court applied <u>Strickland</u> in a manner consistent with federal law when it found that Lynd's trial counsel's conduct was not deficient. Further, the state habeas court's finding that counsel adequately investigated Lynd's background, mental health, and substance abuse is supported by evidence in the record. We therefore find this claim to be without merit.

### C. Counsel's Failure to Investigate State's Case and Possible Defenses

Lynd's third argument is that his counsel was ineffective when he failed to investigate whether the victim could have regained consciousness after being shot twice in the head.[6] Lynd argues that his counsel's failure to investigate such evidence prejudiced him because if the victim could not have regained consciousness after the second shot – and before he placed her into his trunk – he could not have been convicted of kidnapping.[7]

---

[6] Lynd also argued that his counsel failed to adequately investigate the bad character evidence offered by the state. With respect to this issue, the record indicates that Lynd's trial counsel moved to have the evidence excluded. The trial court admitted the evidence over objection, and the admission was upheld by the Georgia Supreme Court. The state habeas court denied this claim on the merits, stating that the "Georgia Supreme Court ruled on the admissibility of the similar transactions and bad character evidence and found adversely to Petitioner. Petitioner has not made the requisite showing that trial counsel's performance was deficient." We find no error in this regard.

[7] On direct appeal, Lynd made the related argument that there was insufficient evidence to support the jury verdict that he murdered the victim while engaging in the commission of another capital felony, to wit, kidnapping with bodily injury. Because the victim could not have regained consciousness, he argues that he could not have been guilty of kidnapping her. The Georgia Supreme Court denied this claim, holding:

> Lynd argues he did not commit the offense of kidnapping with bodily injury because the
> victim was unconscious after the second shot. However, even if we were to accept the

15

The state habeas court denied this claim on the merits, holding that Lynd's "attorneys asked for and received monies to hire an investigator, who subsequently performed an investigation and testified at trial . . . . Petitioner has not made the requisite showing that trial counsel's performance was deficient." An independent review of the record reveals that Lynd's counsel adequately investigated the state's case and possible defenses, prepared and argued this defense in particular, and elicited favorable trial testimony on this issue from the state's expert witness. During cross examination, Lynd's counsel obtained the following concessions from the state expert witness: (1) although the victim could have regained consciousness, the majority of victims would not regain consciousness after receiving the second shot; (2) it was possible that the victim in this case did not regain consciousness; and (3) nothing in the autopsy report indicated that the victim regained consciousness. Lynd has not pointed to any other information that his counsel could have discovered through additional investigation of this defense.

Accordingly, we cannot hold that the state habeas court's denial of this claim was contrary to federal law or was based on an unreasonable factual determination.

---

untenable assumption the victim could not have been taken "against her will," see O.C.G.A. § 16-5-40(a) (defining kidnapping), if she were unconscious the entire time, see Taylor v. State, 194 Ga. App. 871(2), 392 S.E.2d 57 (1990), the evidence is persuasive that she regained consciousness and vigorously protested her confinement in the trunk of her car before Lynd shot her a third time and killed her.

Lynd, 414 S.E.2d at 8.

16

D. Court-Appointed Counsel's Conflict of Interest

Lynd's final argument is that he was denied effective assistance of counsel because his court-appointed counsel had a conflict of interest resulting from his previous representation of the victim and her ex-husband in a bankruptcy proceeding. Lynd argues that, by appointing the attorney, the trial court compelled him to waive the conflict of interest in violation of the Sixth Amendment.[8]

The Sixth Amendment right to effective assistance of counsel encompasses the right to counsel untainted by conflicts of interest. See Cuyler v. Sullivan, 446 U.S. 335 (1980); Holloway v. Arkansas, 435 U.S. 475 (1978). This right is violated when the defendant's attorney has an actual conflict of interest that adversely affects the lawyer's performance. Cuyler, 446 U.S. at 350; United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir. 1993).

This issue likewise was addressed and rejected by the Georgia Supreme Court:

> Lynd also argues that the attorney appointed by the court was laboring under a conflict of interest. Years previously, the appointed attorney had represented the victim's ex-husband in "a bankruptcy or something." The attorney testified that he likely had represented the victim also, but he could not remember her. The victim's husband presently resides in

---

[8] Lynd makes a related argument that he was denied his constitutional right to counsel of his own choice by the trial court's appointment of the same attorney. This claim was raised separately in Lynd's habeas petition, as Claim Four, and was not certified for appeal by the district court. Therefore, we decline to review this claim.

17

Melbourne, Florida, according to the record, and did not testify in this case. The appointed attorney stated to the court that he was merely bringing the matter to the court's attention. Neither he nor the retained attorney suggested to the court how there was either an actual or serious potential for a conflict of interest. See Mitchell v. State, 261 Ga. 347, 405 S.E.2d 38 (1991).

Lynd, 414 S.E.2d at 10.

In denying this claim on the merits, the Georgia Supreme Court did not find the existence of an actual or even potential conflict. Lynd has presented no argument demonstrating that the Georgia Supreme Court unreasonably applied clearly established federal law nor any evidence to rebut the court's factual finding that no conflict existed. After reviewing the record, we find no misapplication of federal law and no evidentiary support for the existence of an actual conflict of interest. Accordingly, this Court cannot find that the Georgia Supreme Court erred when it denied this claim.

For all of the foregoing reasons, Lynd's petition is **DENIED.**