A90A1535. CHRYSLER CREDIT CORPORATION v. BROWN.
(402 SE2d 753)

Sognier, Chief Judge.

Melva Brown brought suit in Coffee County against Chrysler Motors Corporation ("Chrysler") and Coffee Chrysler-Plymouth-Dodge (the "dealer"), alleging fraud in her purchase of a Chrysler automobile represented as new when in fact it had been sold or leased previously. Both defendants answered. After discovery revealed that Chrysler Credit Corporation ("Chrysler Credit") previously had financed a sale of the same car to another buyer, Brown sought and obtained leave of court to add Chrysler Credit as an additional defendant, and filed an amended complaint. Chrysler Credit's registered agent for service was served on July 25, 1989, but no answer was filed by Chrysler Credit. On December 14, 1989, Brown voluntarily dismissed Chrysler and the dealer and took a default judgment against

Chrysler Credit. Both the dismissal and the default judgment were filed on December 15, 1989. The judgment recited that the issue of damages had been tried before the court without a jury, and awarded damages in favor of Brown and against Chrysler Credit for $511,397. On January 16, 1990, Chrysler Credit moved the court to set aside the judgment and open the default, and for a new trial. The trial court denied the motions, and we granted Chrysler Credit's application for leave to appeal.

1. Appellant first contends the trial court erred by denying its motion to set aside the judgment because it was given no notice of the hearing during which evidence was heard on the issue of damages, such notice was required by OCGA § 9-11-55 (a), and the lack of notice constituted a nonamendable defect appearing on the face of the record. See OCGA § 9-11-60 (d). Appellant argues that a proper construction of OCGA § 9-11-55 (a) (which provides that if an action in default is ex delicto or involves unliquidated damages, the plaintiff must prove damages before the court without a jury, with the defendant having the right to introduce evidence as to damages as well) compels the conclusion that notice must be given for ex delicto and unliquidated claims. Thereafter, appellant contends, both parties have the right to move for a new trial as to damages, and the defendant is entitled to a jury trial if a pleading is filed raising that issue.

We do not agree. The issue appellant raises here regarding the applicability of OCGA § 9-11-55 (a) has been decided adversely to it in *Newell Road Bldrs. v. Ramirez*, 126 Ga. App. 850 (192 SE2d 184) (1972). Further, OCGA § 9-11-5 (a) specifically provides that "the failure of a party to file pleadings in an action shall be deemed to be a waiver by him of all notices, including notices of time and place of trial." See generally *Hulsey Pool Co. v. Troutman*, 167 Ga. App. 192, 193 (306 SE2d 83) (1983) (held, local rule requiring notice prior to hearings must yield to State law as expressed in OCGA § 9-11-5 (a)). Accordingly, the trial court did not err by denying appellant's motion on this ground.

2. Appellant next contends the trial court erred by failing to set aside the judgment on the ground that the court lacked jurisdiction over it. Appellant argues that venue, a part of jurisdiction, was improper as to it in Coffee County because it had no office in Coffee County, and since venue in Coffee County depended upon the "residence" there of the dealer, when the dealer was dismissed venue was no longer proper in Coffee County. Although we could agree with appellant's contention if venue in Coffee County were based only on Ga. Const. 1983, Art. VI, Sec. II, Par. IV, which provides that suits against joint tortfeasors residing in different counties may be tried in either county, we find that venue was proper in Coffee County on another basis, and thus we cannot agree with appellant's contention.

OCGA § 14-2-510 (b) (3) provides that for purposes of determining venue in tort actions against corporations the "residence" of the corporation, and consequently the proper venue, shall be deemed to be "in the county where the cause of action originated, if the corporation has an office and transacts business in that county." In the case at bar, it is uncontroverted that appellant is a foreign corporation registered to do business in Georgia; that its registered office is in Fulton County but it transacts business in Coffee County; and that the cause of action originated in Coffee County. Thus, the sole issue is whether appellant has an "office" in Coffee County. The record reveals that in opposition to appellant's motions, appellee submitted 13 affidavits in which the affiants averred that they had purchased vehicles through the dealership or its predecessor and financed them with appellant, and the paperwork was furnished, completed, and handled solely by the dealership employees in Coffee County.

In *Musgrove v. Kirksey Ford Sales*, 159 Ga. App. 276 (283 SE2d 292) (1981), a tort suit was filed in Decatur County against a local car dealership and Ford Motor Credit Company. After the local dealership was voluntarily dismissed, Ford Motor Credit moved for dismissal as to it on the ground of improper venue. This court reversed the trial court's grant of the motion, finding that although Ford Motor Credit's registered office and agent were in Fulton County, because of various factors, including the dealership's performance of certain functions on behalf of Ford Motor Credit such as taking credit applications, completing the paperwork, and taking payments, Ford Motor Credit was deemed to have an "office" in Decatur County, rendering venue against it proper there under former Ga. Code Ann. § 22-510 (b) (currently OCGA § 14-2-510 (b)).

We find the evidence presented in appellee's affidavits sub judice sufficiently similar to that in *Musgrove*, supra, to have authorized the trial court, as the finder of fact, to find that venue was proper in Coffee County because appellant had an "office" there. (We note that although it appears that the affidavits were served upon appellant on the day of the hearing on the motions, and OCGA § 9-11-6 (d) provides that affidavits offered in opposition to a motion must be served not later than one day before the hearing, contrary to appellant's argument the trial court, in its discretion, may consider affidavits which, on their face, are untimely because served on the day of the hearing, and it is unnecessary that the record show affirmatively that a motion to extend the time was made and granted. *Leagan v. Levine*, 158 Ga. App. 293, 294-295 (1) (279 SE2d 741) (1981). Accord *Blair v. Motorized Leasing*, 173 Ga. App. 283 (1) (325 SE2d 896) (1985), overruled on other grounds, *Adams v. D & D Leasing Co.*, 191 Ga. App. 121 (381 SE2d 94) (1989).)

Moreover, the record in this case does not include a transcript of

the hearing on appellant's motions, and we must presume, therefore, that the trial court's finding in this regard was supported by the evidence presented at the hearing. See *In the Interest of C. C. B.*, 188 Ga. App. 46 (3) (372 SE2d 6) (1988). "This court will not interfere with the judgment of the trial court on a motion to set aside a judgment for lack of personal jurisdiction if there is any evidence to support it." *Adair Realty Co. v. Parrish*, 192 Ga. App. 681 (385 SE2d 770) (1989). Accordingly, we find the trial court did not err by denying appellant's motion to set aside the judgment for lack of jurisdiction. *Adair Realty*, supra.

3. Appellant enumerates as error the trial court's denial of its motion for a new trial made on the grounds that the judgment was contrary to law and the evidence. Although appellee alleged her entitlement to punitive damages in the body of her complaint, she prayed only for $500,000 in unspecified damages. The judgment entered against appellant recites only that appellee recover from appellant the sum of $511,397, and does not specify what portion of the recovery, if any, is punitive, rather than compensatory, damages. Nonetheless, because the sales finance contract attached to the complaint indicates that the sale price of the automobile was $21,397, and the gravamen of appellee's complaint was that she was damaged as a result of an alleged misrepresentation, it appears obvious that a large portion of the award was punitive, and not compensatory, in nature. The record on appeal does not include a transcript of the damages hearing, and ordinarily in such case we would presume that evidence was presented to support the award. See *In the Interest of C. C. B.*, supra.

Because we find that the judgment below is contrary to law in two respects, however, we are persuaded that under the circumstances present here, application of such a presumption would be a manifest injustice. First, we are faced with a judgment which in several respects violates a specific statute. "An award of punitive damages must be specifically prayed for in a complaint. In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings." OCGA § 51-12-5.1 (d) (1). Pretermitting the question whether appellee's allegation in the body of her complaint satisfies the statute's requirement that punitive damages be "specifically prayed for," the judgment reveals on its face that the trier of fact failed either to make a specific finding that punitive damages were awardable here or to set a specific amount in accordance with the mandate of OCGA § 51-12-5.1 (d) (2). Both of these defects render the judgment violative of OCGA § 51-12-5.1 (d). Moreover, OCGA § 51-12-5.1 also provides, in subsection (g), that for any tort action not arising from product liability or where it

is not found that the defendant acted, or failed to act, with the specific intent to cause harm, "the amount [of punitive damages] which may be awarded in the case shall be limited to a maximum of $250,000.00." No finding was made as to whether appellant acted with specific intent to cause harm, and the judgment entered in this case does not separate the amounts awarded as compensatory and punitive damages. Consequently, we are unable to ascertain whether the judgment is in compliance with OCGA § 51-12-5.1 (g), and if it is not, what amount must be written off.

Second, the proper measure of compensatory damages in an action alleging fraud in the sale of personalty is the difference between the value of the item as represented by the seller and its actual value at the time of delivery. See *Murdock v. Godwin*, 154 Ga. App. 824, 826 (4) (269 SE2d 905) (1980). This case did not involve personal injury, and even assuming the car had *no* actual value, the award bears no rational relationship to the injury in that it is approximately 24 times the largest possible amount of property damage. Accordingly, we find that the judgment was contrary to law, see *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 122-123 (5), (6) (365 SE2d 827) (1988), and the trial court erred by denying appellant's motion for a new trial as to damages.

4. Our decision in Division 3, supra, invalidates the final judgment and returns this case to the posture it occupied before final judgment was entered, i.e., in default as to liability. We must consequently address appellant's contention that the trial court erred by denying its motion to open the default. See generally *P. H. L. Dev. Corp. v. Smith*, 174 Ga. App. 328-329 (1) (329 SE2d 545) (1985). Generally, whether the trial court opens a default is a matter resting within its sound discretion, but under OCGA § 9-11-55 (b) the movant must show, inter alia, some legal excuse for failing to answer. Id.; *Millholland v. Stewart*, 166 Ga. App. 431, 432-433 (1) (304 SE2d 533) (1983). "In order for this court to intervene in this proceeding, we must find as a matter of law that there is nothing less than reasonable evidence of excusable neglect on the part of [appellant] and that perforce the trial court acted arbitrarily and abused its discretion." *U. S. Elevator Corp. v. Smyrna Hosp.*, 182 Ga. App. 886, 888 (357 SE2d 322) (1987). As the record shows that appellant failed to demonstrate any semblance of a legal excuse for failing to answer, but showed at best only that its failure was inadvertent rather than willful, the trial court did not abuse its discretion by failing to grant appellant's motion to open the default. See id.; see generally *Market Ins. Corp. v. IHM, Inc.*, 192 Ga. App. 441-442 (1) (385 SE2d 307) (1989).

*Judgment affirmed in part, reversed in part and case remanded. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 11, 1991 —
REHEARING DENIED FEBRUARY 22, 1991 —

Barrow, Sims, Morrow & Lee, R. Stephen Sims, Alston & Bird, Earle B. May, Jr., G. Conley Ingram, for appellant.
Hudson & Solomon, James D. Hudson, for appellee.