A97A0710. DRUG EMPORIUM, INC. v. PEAKS et al.
(488 SE2d 500)

BIRDSONG, Presiding Judge.

After appellees Joann Peaks and Eric Jackson filed their complaint for false imprisonment, false arrest, slander, intentional infliction of emotional distress, loss of consortium, and bad faith against Drug Emporium, Inc. and Super Discount Markets d/b/a Cub Foods and both defendants were served with the summons and complaint, appellant Drug Emporium did not file a timely answer. Defendant Super Discount Markets filed its answer, but appellees dismissed the complaint against Super Discount Markets. On December 29, 1995, default judgment was entered against appellant.

Appellees pled in some 46 paragraphs the averred facts that set forth two theories of recovery that were ultimately presented to the

jury: (1) false imprisonment; and (2) false arrest. Such averments set forth that Mary Wilson attempted to pass a forged check with appellant but that it was detected as being forged; Wilson disappeared from the store, and appellant's employees began a search including going next door to Cub Foods where they incorrectly identified Peaks, had the Atlanta Police Department called, had Cub Foods security detain Peaks and her husband, had them taken to appellant's store by the police, had them identified incorrectly by its store employees, and caused Peaks to be arrested for forgery which caused her to be held for 14 hours in custody. The complaint also pled that Wilson was arrested and confessed which led to the release of Peaks.

The complaint also averred that appellant's employees did not merely report the felony but searched the premises of Cub Foods, twice falsely identified Peaks as the perpetrator, caused others to detain not only Peaks but also her husband, Jackson, and then had them taken to the manager's office of appellant where they were detained while a second identification was made and a discussion took place about the arrest of Peaks. The complaint alleged that appellant "acted in bad faith, ha[s] been stubbornly litigious, and/or ha[s] caused plaintiffs unnecessary trouble and expense." The complaint prayed "that plaintiff Joann Peaks be awarded punitive damages as a result of defendant Super Discount Market, Inc.'s wilful or grossly negligent conduct, which indicated a wanton disregard for the rights of plaintiff, in an amount not less than $500,000; that plaintiff Eric Jackson be awarded punitive damages as a result of defendant Super Discount Market, Inc.'s wilful or grossly negligent conduct, which indicated a wanton disregard for the rights of plaintiff, in an amount not less than $250,000; that plaintiff Joann Peaks be awarded punitive damages as a result of defendant Drug Emporium, Inc.'s wilful or grossly negligent conduct, which indicated a wanton disregard for the rights of plaintiff, in an amount not less than $500,000."

The complaint alleged inter alia that the arrest of the plaintiffs was instigated and effectuated at the direction of employees of Drug Emporium, Inc. The body of the complaint, however, does not aver that the facts averred constitute aggravated circumstances authorizing the imposition of punitive damages under OCGA § 51-12-5.1 (b); that is, it is not averred in the body of the complaint that the facts alleged constituted "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."

On January 10, 1996, appellant filed its answer and moved to open the default. Attached to the motion to open default was the affidavit of Monique Jobs. The affidavit stated that she was the employee of C T Corporation Systems ("C T") whose job it was to

receive service; that C T was the agent for service of appellant; that service was made on September 5, 1995; that she had the complaint and summons delivered by Federal Express to appellant at 155 Hidden Ravine Drive, Powell, Ohio 43065; that a receipt from appellant was returned to C T on September 7, 1995; and that C T did not notify local counsel for appellant or appellant's insurance carrier. The affidavit of Donna Talley, assistant to the vice-president of appellant, stated that the complaint was received from C T; that it was facsimiled to Daniel James Insurance Agency, Inc., Toledo, Ohio, general agent for its liability carrier General Insurance; that C T forwarded various other pleadings over the next several months; that on January 3, 1996, a default judgment was received; and that until the default judgment was received, it did not know that no answer had been filed. The affidavit of Patricia K. Page, senior claims representative for Daniel James Insurance Agency, Inc., indicated that she received the facsimile but she does not have any transmission report to the Atlanta office of General Insurance. The affidavit of Neita Conley, claims supervisor for General Insurance, states that it never received notice of the suit from its agent.

The trial court heard the motion to open default on February 29, 1996. On June 11, 1996, the motion to open default was denied.

The suit came to jury trial on the issue of damages on June 11, 1996; a verdict was returned on June 14, 1996; and a judgment was entered on July 2, 1996, in the amount of $4,000 for necessary expenses, $82,000 for pain and suffering, $7,500 for loss of consortium, and $150,000 for punitive damages.

Although appellant filed its motion for new trial after oral argument on the motion, the trial court denied appellant's new trial motion. Thereafter, appellant timely filed its notice of appeal. *Held*:

1. Appellant's first enumeration of error is that the trial court erred in denying appellant's motion to open default.

Appellant admitted receipt of the summons and complaint on September 5, 1995. Appellant then waited 117 days until after a default judgment was entered against it, before filing its motion to open the default under OCGA § 9-11-55. After the initial service, C T received additional subsequent pleadings for appellant, which were passed on to appellant and which appellant placed in its files without further inquiry as to the suit until it received the default judgment.

Where a defendant has been properly served and relies upon the insurer, the insurance agent, or counsel to file an answer timely, the failure of the defendant's agent, counsel, or insurer is imputable to the defendant in determining the presence or absence of excusable neglect. See *Pulliam v. Nichols*, 202 Ga. App. 95 (413 SE2d 215); *U. S. Xpress v. W. Timothy Askew & Co.*, 194 Ga. App. 730 (391 SE2d 707). Excusable neglect means a reasonable excuse or justification for fail-

ure to answer timely; it is " ' "that neglect which might have been the act of a reasonably prudent person under the same circumstances." ' " (Citations omitted.) *Ezzard v. Morgan*, 118 Ga. App. 50, 53 (3) (162 SE2d 793); see *Security Mgmt. Co. v. Keasler*, 131 Ga. App. 230 (205 SE2d 515).

The failure of the insurance agent to deliver the summons and complaint to the insurer and the failure of the defendant to check timely on the suit within the 45 days are omissions which the trial court, in its discretion, can find do not constitute "excusable neglect." Conversely, the trial court in its discretion could have found that the case sub judice was an "appropriate case" to open default, but it did not.

The affidavit of the claims agent stated conclusions, not facts, upon which the trial judge could exercise sound discretion; the affidavit failed to set forth a " 'good and meritorious defense.' " *Coleman v. Dairyland Ins. Co.*, 130 Ga. App. 228, 229 (202 SE2d 698); see also *Town of Thunderbolt v. River Crossing Apts., Ltd.*, 189 Ga. App. 607 (377 SE2d 12). Where the conditions precedent to the opening of default have not been met, the trial court does not abuse its discretion in denying a motion to open the default. See *Taurus Productions v. Maryland Sound Indus.*, 155 Ga. App. 147 (270 SE2d 337); *B-X Corp. v. Fulton Plumbing Co.*, 140 Ga. App. 131 (230 SE2d 331); *Ga. Hwy. Express Co. v. Do-All Chem. Co.*, 118 Ga. App. 736 (165 SE2d 429).

The role of the appellate court in reviewing a grant or denial of a motion to open default is the determination of whether all the conditions have been met and, if so, whether the trial court abused its discretion under the facts and circumstances. *Majestic Homes v. Sierra Dev. Corp.*, 211 Ga. App. 223 (438 SE2d 686). We find that the trial court did not abuse its discretion in denying the motion to open the default judgment in the case sub judice.

2. Although the trial court did not abuse its discretion by denying Drug Emporium's motion to open the default, this case is so procedurally and substantively defective that the judgment of the trial court awarding punitive damages cannot be affirmed. We cannot affirm an award of punitive damages in which the trial court declined to follow the procedures and standards now required by OCGA § 51-12-5.1, awarded punitive damages against appellant Drug Emporium to a party who did not pray for them, and charged the jury based on an outdated punitive damage Code section.

(a) Prejudicial error occurred in this case by the giving of an outdated charge on punitive damages consistent with the provisions of OCGA § 51-12-5. In charging the jury regarding the basis for an award of punitive damages, the court stated that "the jury may give additional damages either to deter the wrongdoer from repeating the

trespass *or as compensation for the wounded feelings of the plaintiffs.*" (Emphasis supplied.) While this is an accurate statement of the former law, see OCGA § 51-12-5, the current punitive damages statute, applicable to this case, expressly does not allow punitive damages as *compensation* for wounded feelings or otherwise, but solely to "punish, penalize, or deter a defendant." OCGA § 51-12-5.1 (c). Thus, the trial court's charge plainly was incorrect. The only issues remaining, regarding this matter, are whether appellant properly excepted to the charge and whether the error was harmless.

Appellant expressly objected to the trial court's charge on punitive damages on the ground that the punitive damages statute had been changed. Appellant's attorney specifically referred to the new statute, OCGA § 51-12-5.1, and stated that he had believed the court would charge portions of the new statute. The trial court responded: "I would have charged [the new statute] but [the plaintiff] wanted to insist on his position on the request he made. I gave it the way he wanted it." Appellant's exception clearly was sufficient to bring the issue to the trial court's attention and preserve the issue for appeal. Appellant's third enumeration of error on its face unequivocally is broad enough to assert this error to this Court. While appellant's argument of this issue is not so apparent in its appellate brief, when viewed in its totality, we find that the argument advanced, although not a model to be followed, did suffice to prevent this issue from being abandoned.

However, pretermitting whether appellant adequately preserved this question on appeal by taking a timely, adequate exception to the trial court's charge of the old statute rather than the new statute and by sufficiently arguing this particular issue in its appellate brief, is the issue whether this was an error of such nature and magnitude as to constitute a plain error of which an appellate court can take notice sua sponte. It clearly is such. It is a general appellate rule that in "exceptional circumstances . . . appellate courts may, on their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *Kearney v. State*, 184 Ga. App. 64, 66 (360 SE2d 633). Recently our Supreme Court, after holding that both errors not raised and errors not timely raised generally are waived, stated: "In the future, however, except in cases of 'plain error,' enumerations of error not timely raised and/ or argued shall be waived." (Footnote omitted.) *Lynd v. State*, 262 Ga. 58, 60-61 (8) (414 SE2d 5). " 'Plain error' is that which is 'so clearly erroneous as to result in a likelihood of a grave miscarriage of justice' or which 'seriously affects the fairness, integrity or public reputation of a judicial proceeding.' " (Citation omitted.) Id. at 61, n. 2. Inherent in this holding is that "plain error" is not so waived.

In *Foskey v. Foskey*, 257 Ga. 736, 737 (2) (363 SE2d 547), our Supreme Court listed four types of erroneous jury charges as to which reversal will occur though no exception thereto was taken. Among those erroneous charges are those which are of a kind likely to influence a jury either to find against a defendant or to return a larger verdict than it might have otherwise done and those which are blatantly apparent and prejudicial to the extent the erroneous charge raises the question of whether the losing party has *to some extent at least* been deprived of a fair trial because of it. The erroneous charge here at issue was of a kind likely to influence a jury to find an award in favor of plaintiffs merely to compensate for their wounded feelings and also is so blatantly in error as to raise the question whether, as to at least the award of punitive damages, appellant was deprived of a fair trial because of the erroneous charge. Thus, on either of these two *Foskey* grounds, the charge here at issue constituted plain error within the meaning of *Lynd*, supra, and the error is preserved for appellant's consideration and correction.

The correct legal basis (as distinguished from the correct legal standard — an issue discussed in subsequent subdivisions in this opinion), which would support an award of punitive damages by the jury, was a substantial issue in these proceedings. It is beyond dispute that "'the trial court has a duty, even in the absence of a request, to charge the jury the law as to every substantial and vital issue in the case. . . .' [Cit.]" *Agnew v. State*, 267 Ga. 589, 591 (2) (481 SE2d 516). Notwithstanding speculation unsupported by the record regarding the effect of this error, it cannot be said this critical charging error was harmless, as the erroneous charge (purporting to address the proper legal basis for an award of punitive damages) erroneously allowed the jury to award punitive damages merely for the wounded feelings of the plaintiffs. It also did not address the correct legal basis supporting an award *and* inform them that punitive damages no longer could be awarded as *compensation*. OCGA § 51-12-5.1 (c). Moreover, as held by *Foskey*, supra at 737 (2), "'"[w]hen an error in the charge of the court is shown to exist, it is presumed to be prejudicial and harmful, and this court will so hold unless it appears from the entire record[, which as to this error it does not,] that the error is harmless."'" (Citations omitted.) Based on this error alone, reversal of the punitive damage award is required.

(b) Secondly, although not enumerated as error or argued in Drug Emporium's appellate brief, appellee Jackson is not entitled to punitive damages because the complaint's prayer for relief contains no specific prayer for punitive damages (OCGA § 51-12-5.1 (d) (1)) on his behalf from Drug Emporium. Instead, his prayer for relief sought punitive damages only from a co-defendant who was dismissed from the case after Drug Emporium's default. Therefore, he failed to meet

the requirement of OCGA § 51-12-5.1 (d) that his complaint specifically pray for punitive damages. This error is subject to appellate review for the reasons stated in Division 1, supra. *Lynd*, supra; *Foskey*, supra; *Kearney*, supra.

This error was not cured by the charge to the jury. At various times the charge discussed punitive damage awards to both appellees/plaintiffs for false arrest or false imprisonment but, at a later point, instructed the jury that appellee Jackson's only claim was for loss of consortium. Because the charge to the jury was so misleading as to create a fair risk the jury would conclude that punitive damages could be awarded to both plaintiffs against Drug Emporium, because the verdict form was so ambiguous as to allow a lump sum award of punitive damages to both plaintiffs, and because the verdict and judgment on their face awarded punitive damages to both plaintiffs jointly, we cannot sever the punitive damages awarded Jackson from the punitive damages awarded Peaks. Therefore, the verdict and judgment are tainted and the judgment on punitive damages must be reversed. *Reserve Life Ins. Co. v. Gay*, 214 Ga. 2, 3 (102 SE2d 492); *Eastern Foods v. Foreman*, 202 Ga. App. 347, 348 (415 SE2d 1). Compare *Mock v. Wrigley*, 178 Ga. App. 660, 661 (344 SE2d 482).

(c) In asserting that prejudicial error did not occur regarding the award of punitive damages, appellees rely substantially on the precedent of this Court in *Hill v. Johnson*, 210 Ga. App. 824 (437 SE2d 801). However, *Hill* is distinguishable. Of particular significance is that in *Hill*, unlike the case before us, Johnson included in his complaint a separate count for punitive damages expressly averring that " 'such actions merit the award of punitive damages to plaintiff under OCGA § 51-12-5.1.' " Id. at 824, 825. *Hill* held that the allegations in the complaint, including this express averment, must be taken " 'as if every item and paragraph of the complaint . . . were supported by proper evidence,' (OCGA § 9-11-55 (a)), [and when] coupled with the default judgment granting judgment to [plaintiff] on liability, are sufficient to satisfy the requirement in OCGA § 51-12-5.1 (d) that 'the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made.' " Id. at 825. Thus, the express and unrestricted averment in the complaint in *Hill* that an award of punitive damages was merited under OCGA § 51-12-5.1 would perforce be sufficient to satisfy the higher statutory standard of proof of clear and convincing evidence (OCGA § 51-12-5.1 (b)) and the requirement that punitive damages must be specifically prayed for in the complaint. OCGA § 51-12-5.1 (d) (1).

In this case, because no evidence on liability for punitive damages was presented at the hearing, appellee Peaks' entitlement to punitive damages depends solely upon the allegations in her complaint. As the complaint averred no viable claim for punitive dam-

ages, the default alone was not sufficient to authorize an award of punitive damages.

"A judgment by default properly entered against parties sui juris operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations of the declaration. Conclusions of law[ ] and facts not well pleaded and forced inferences are not admitted by a default judgment." (Citations and punctuation omitted.) *Stroud v. Elias*, 247 Ga. 191, 193 (1) (275 SE2d 46). Although appellees' prayer for relief requested the award of punitive damages, the prayer is not an allegation in the complaint which requires an answer (OCGA § 9-11-8 (d)) and is not part of plaintiffs' cause of action. See *Mitchell v. City of Atlanta*, 217 Ga. 202, 205 (121 SE2d 764); *Kinzy v. Waddell*, 203 Ga. 689, 692 (47 SE2d 872); *Empire Banking Co. v. Martin*, 133 Ga. App. 115 (210 SE2d 237).

In the case at bar there exists no separate count in the complaint for punitive damages, and particularly, there exists no averment that an award of punitive damages was merited under OCGA § 51-12-5.1. Thus, appellees cannot rely upon *Hill*, supra, to render harmless their failure to comply with the statutory requirements of OCGA § 51-12-5.1, particularly as to the higher standard of proof therein required to support an award of punitive damages. *Hill* did not hold that deviating from the procedures in OCGA § 51-12-5.1 was not error; *Hill* held that in that particular case it was harmless error. Moreover, *Chrysler Credit Corp. v. Brown*, 198 Ga. App. 653, 656 (402 SE2d 753) held that it was error to disregard the procedures established in OCGA § 51-12-5.1. Under these circumstances, *Chrysler Credit Corp. v. Brown* requires reversal of the award of punitive damages in this case.

(d) Although the complaint contained allegations that Drug Emporium caused appellees' false arrest, false imprisonment, slander, and intentional infliction of emotional distress, this case was submitted to the jury *only* on appellees' claims of false arrest and false imprisonment. (The record does not reveal how or why the other allegations against Drug Emporium were removed from the jury's consideration.) Therefore, it is wrong to conclude that punitive damages were authorized on one basis and then decide the amount of punitive damages to be awarded on another basis. This is particularly true when the allegations submitted to the jury regarding false imprisonment and false arrest do not allege facts sufficient to state a claim authorizing the award of punitive damages based only upon Drug Emporium's default.

The complaint, which did not accompany the jury to the deliberations room, merely averred allegations of false arrest and false imprisonment, torts which in themselves have no element of malice.

See *Williams v. Smith*, 179 Ga. App. 712, 713-714 (348 SE2d 50): The only essential elements in an action to recover damages for illegal arrest or false imprisonment are the arrest or detention and the unlawfulness thereof. Malice and lack of probable cause need not be shown. Adams & Adams, Ga. Law of Torts (1996 ed.) § 29-4, False Imprisonment & False Arrest, p. 498: "Some cases have confused the tort of false arrest with that of malicious arrest, but malicious arrest involves the initiation of criminal proceedings." Compare Adams & Adams, supra at § 29-5, Malicious Prosecution & Malicious Arrest, pp. 503-504. As no averment asserts that Drug Emporium's employees acted maliciously, the complaint in this case did not allege counts of malicious arrest or malicious prosecution. Further, the trial court clearly interpreted the allegations as constituting false arrest and not malicious arrest because the trial court advised the jury that false arrest and false imprisonment were used interchangeably in the charge.

Hence, the complaint does not authorize an award of punitive damages because there is no specific allegation that Drug Emporium's actions showed wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. See OCGA § 51-12-5.1 (b). Further, nothing in the matters alleged authorized one to infer or conclude as a matter of fact (see *Stroud v. Elias*, supra at 193) that Drug Emporium's actions rose to that level. The contention that Drug Emporium somehow satisfied the elements of the tort of intentional infliction of emotional distress is a conclusion of law that is not admitted by a default judgment. Id.

A default judgment only "operates as an admission by the defendant of the truth of the definite and certain allegations and the fair inferences and conclusions of fact to be drawn from the allegations." (Citations and punctuation omitted.) Id. at 193 (1). Consequently, even excluding the fact that the trial court submitted the issue of damages solely as to appellees' claims of false arrest and false imprisonment and appellee Jackson's claim of loss of consortium, the default still does not support the award of punitive damages to the appellees. Notwithstanding that Drug Emporium's default admitted each and every material allegation of the complaint except the amount of damages suffered by Peaks (*Whitby v. Maloy*, 150 Ga. App. 575 (1) (258 SE2d 181)), these admissions were not sufficient to authorize a charge on punitive damages because they contained *no* allegations concerning punitive damages within the meaning of *Stroud*, supra.

3. Further, the statement in the prayer that appellee Peaks be awarded punitive damages because of Drug Emporium's "wilful or grossly negligent conduct, which indicated a wanton disregard for

the rights of plaintiff" is no substitute for an allegation in the complaint seeking punitive damages. Even though "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally" (OCGA § 9-11-9 (b)), because of the present requirement in OCGA § 51-12-5.1 that punitive damages be specifically prayed for in the complaint, OCGA § 9-11-9 (b) is no longer applicable in punitive damages cases. Otherwise the requirement in OCGA § 51-12-5.1 (d) requiring that an award be specifically prayed for has no meaning. Such a result would violate the rule of statutory construction of *Gilbert v. Richardson*, 264 Ga. 744, 747-748 (3) (452 SE2d 476). Further, because this prayer in this complaint is stated in the alternative, it adds nothing to the complaint as gross negligence alone will not support an award of punitive damages.

In another context, to state specifically special damages means that they must be pleaded with particularity. *Signal Oil & Gas Co. v. Conway*, 126 Ga. App. 711, 717 (3) (191 SE2d 624), rev'd on other grounds, 229 Ga. 849 (194 SE2d 909). The same rule applies when praying for punitive damages. Therefore, in this case, the default, standing alone, was not sufficient to support a determination that Drug Emporium was liable for punitive damages.

4. Moreover, we reject the contention that appellant's mere failure to move for a directed verdict or to strike the evidence, based upon a failure to prove aggravating circumstances by "clear and convincing evidence," constituted an express waiver of this higher statutory standard of proof. Contrary to any implicit contention, *Hill*, supra, did not address this particular issue and did not so affirmatively hold. Likewise, the case of *Floyd v. First Union Nat. Bank &c.*, 203 Ga. App. 788 (417 SE2d 725) did not consider the appellate issues here under contention. Rather, one of the major issues addressed in *Floyd* was the effect of a default judgment on an averment by plaintiffs which demanded judgment as to both claims for punitive damages and attorney fees " 'in an amount to be determined at trial' rather than in a specific dollar amount." Id. at 788 (1). *Hill* and *Floyd* are not dispositive of these matters as " ' "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." ' [Cits.]" *Gordy Tire Co. v. Dayton Rubber Co.*, 216 Ga. 83, 89 (1) (114 SE2d 529).

5. Appellant took exception to the giving of both appellees' Requests to Charge Nos. 4 and 5 and to the charging remarks given by the trial court immediately following the giving of appellees/plaintiffs' Request to Charge No. 5. In these charging remarks, the trial court emphasized that it was for the jury "to look at the evidence and make [its] determination" whether there exists evidence of the elements necessary to support an award of punitive damages. After re-

emphasizing the element of "an entire want of care and indifference to the consequences [by the defendants]," the trial court gratuitously stated: "Those are the circumstances in which punitive damages would be allowed in this case, or I should say *substantially punitive damages would be allowed. They would be entitled to at least nominal damages.*" (Emphasis supplied.) This latter instruction on its face is both confusing and misleading, and a fair risk exists that the jury would interpret it as mandating them to return an award of punitive damages at least in some nominal amount. "Instructions not warranted by the evidence are cause for a new trial unless it is apparent that the jury could not have been misled thereby." (Citations and punctuation omitted.) *Dept. of Transp. v. Davison Investment Co.*, 267 Ga. 568, 570 (481 SE2d 522).

This charge created a fair risk that the jury would believe they were compelled to award punitive damages to the appellees/plaintiffs, at least in some "nominal" amount. Thus, under the precedent of *Foskey*, supra, this charging error was not waived by a failure to take exception thereto. Further, it was of such nature as to bring them within the protective mantle of OCGA § 5-5-24 (c). Accordingly, this charging error was not waived on appeal, and it must, under the facts of this particular case, be presumed harmful. *Foskey*, supra; OCGA § 5-5-24 (c). As our Supreme Court recently held in *Dept. of Transp. v. Davison Investment*, supra at 570, "[w]e are unable to say that the erroneous charge, as vague as it was, could not have misled the jury."

6. *Wal-Mart Stores v. Forkner*, 221 Ga. App. 209, 210 (1) (471 SE2d 30), where the trial court determined that Wal-Mart's conduct was malicious and wilful during a bench trial on damages and which relied upon *Hill*, supra, is distinguishable and is not controlling as to this issue. Also distinguishable is *Shaw v. Ruiz*, 207 Ga. App. 299, 300 (2) (428 SE2d 98), where both counsel in response to the trial court's inquiry affirmatively stated they had no objections to the charges thereby waiving, due to specific acquiescence, any objection to the charging of OCGA § 51-12-5 rather than OCGA § 51-12-5.1.

For these reasons, the judgment can be affirmed only on the condition that appellees/plaintiffs in error agree to strike therefrom the $150,000 punitive damage award within ten days from the date the remittitur of this Court is made the judgment of the trial court; otherwise, judgment is reversed in its entirety and the case remanded for a new trial. See generally *Cullen v. Novak*, 201 Ga. App. 459, 460 (411 SE2d 331); *Marriott Corp. v. American Academy &c.*, 157 Ga. App. 497, 501 (2) (277 SE2d 785).

*Judgment affirmed on condition. Andrews, C. J., Pope, P. J., Johnson, Blackburn and Ruffin, JJ., concur. Eldridge, J., concurs in part and dissents in part.*

ELDRIDGE, Judge, concurring in part and dissenting in part.

I concur in the majority's Division 1 and respectfully dissent as to the remainder of the opinion.

1. OCGA § 51-12-5.1 (b) provides that where a "defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences," the jury may consider additional damages "solely to punish, penalize, or deter a defendant," under OCGA § 51-12-5.1 (c). Actions for "false imprisonment," "false arrest," "slander," and "intentional infliction of emotional distress," are all intentional torts which come under "willful misconduct," "malice," "wantonness," or "entire want of care" and that authorize the jury to consider punitive damages.

Appellees chose to submit the case to the jury on the theories of false imprisonment and false arrest. "False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. " 'The restraint constituting a false imprisonment may arise out of words, acts, gestures, or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit, and it is sufficient if they operate upon the will of the person threatened and result in a reasonable fear of personal difficulty or personal injuries.' " *Sinclair Refining Co. v. Meek*, 62 Ga. App. 850, 851, hn. 3 (10 SE2d 76) (1940). Since this is a default situation, then the elements of those theories of intentional tort have been satisfied from the detailed facts pled in the complaint, which constitute the aggravating circumstances and which authorize a jury to find aggravating circumstances and to award punitive damages as appropriate additional damages in this intentional tort action. See OCGA § 51-12-5.1 (b); *Stroud v. Elias*, 247 Ga. 191, 193 (1) (275 SE2d 46) (1981).

"Wanton and wilful conduct differs from gross negligence. Wilful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to justify the jury in finding a wantonness in spirit to actual intent." (Citations and punctuation omitted.) *Hendon v. DeKalb County*, 203 Ga. App. 750, 758 (5) (417 SE2d 705) (1992); see also *Dyches v. McCorkle*, 212 Ga. App. 209, 216 (2) (441 SE2d 518) (1994). The facts stated in the complaint and the failure of appellant to put up any evidence at trial as to punitive damages, either to mitigate the imposition of punitive damages or to refute that its conduct was wilful or wanton in order to mitigate the imposition of punitive damages under OCGA § 51-12-5.1 (d) (2), created a jury question as to whether punitive damages should be awarded.

"False imprisonment is an intentional tort, not a tort of negligence." *Williams v. Smith*, 179 Ga. App. 712, 713 (2) (348 SE2d 50)

(1986); see also *Stewart v. Williams*, 243 Ga. 580 (255 SE2d 699) (1979). The cause of action does not require as an essential element malice to constitute false arrest or false imprisonment. See *Williams v. Smith*, supra at 714. OCGA § 51-7-2 provides that malice, in false arrest or prosecution actions, consists of "personal spite or in a general disregard of the right consideration of mankind, directed by chance against the individual injured." See *Barber v. H & H Muller Enterprises*, 197 Ga. App. 126, 130 (2) (397 SE2d 563) (1990); *Worn v. Warren*, 191 Ga. App. 448, 449 (1) (382 SE2d 112) (1989); *Melton v. LaCalamito*, 158 Ga. App. 820, 824 (2) (282 SE2d 393) (1981). However, a jury may reasonably infer the presence of malice as an aggravating factor from the facts pled and admitted by the default, although the complaint never used the "magic" word malice, because malice was not a necessary element of the theory of recovery.

By the default judgment, appellant is barred from showing that there was probable cause for the detention and arrest, and the complaint shows a complete absence of probable cause. "Malice may be inferred if 'defendant's acts were wanton or were done with a reckless disregard for or conscious indifference to the rights of the plaintiff.' *Bowen v. Waters*, 170 Ga. App. 65, 67 (2) (316 SE2d 497) (1984)." *Willis v. Brassell*, 220 Ga. App. 348, 352 (3) (469 SE2d 733) (1996). Therefore, the jury may infer malice from the complete absence of probable cause. See generally inference of malice in malicious prosecution cases id. at 353; *Fuller v. Jennings*, 213 Ga. App. 773, 776 (1) (445 SE2d 796) (1994); *Garmon v. Warehouse Groceries &c.*, 207 Ga. App. 89, 92 (2) (427 SE2d 308) (1993); *McMillan v. Day Realty Assoc.*, 159 Ga. App. 366, 368 (2) (283 SE2d 298) (1981). Appellant's silence as to the aggravating circumstances and failure to put up any defense evidence in mitigation of the punitive damages could be construed by the jury as an admission of plaintiffs' assertions regarding punitive damages.

In the caption of Ga. L. 1987, pp. 915, 916, the General Assembly set out the purpose "to provide trial procedures for pleadings, evidentiary standards, findings of fact, and judgments for awards of punitive damages." In Ga. L. 1987, pp. 917, 918, § 5, OCGA § 51-12-5.1 (d) (1), "[a]n award of punitive damages must be specifically prayed for in a complaint." The act sets no pleading requirements other than "notice pleadings" for the complaint, i.e., pleadings which put the defendant on notice as to what damages will be sought. Punitive damages are not special damages within the meaning of OCGA § 9-11-9 (g); neither does it come within any of the other special pleading requirements. Instead, punitive damages are *additional* damages, which are limited by the provisions of OCGA § 51-12-5.1. The requirement that "[a]n award of punitive damages must be specifically prayed for in a complaint" must be read in pari materia with

the Civil Practice Act and, specifically, with OCGA § 9-11-8 (a) (2) (B), which requires a claim for relief to contain "[a] demand for judgment for the relief to which the pleader deems himself entitled"; such demand is generally called the prayer or prayer for relief which comes at the end of the complaint, counter or cross-claim, and puts the court and parties on notice as to the relief sought. See *Wagner v. Wagner*, 238 Ga. 404, 405 (1) (233 SE2d 379) (1977); *Cross v. Cross*, 230 Ga. 91 (195 SE2d 439) (1973); *Seibers v. Morris*, 226 Ga. 813, 814-815 (3) (177 SE2d 705) (1970). The prayer for relief at the end of the claim in the complaint "constitutes no part of the pleader's cause of action." (Citations and punctuation omitted.) *Empire Banking Co. v. Martin*, 133 Ga. App. 115, 120 (210 SE2d 237) (1974). "Appellants specifically prayed for both punitive damages and attorney fees, and their complaint demanded judgment on both those claims"; this Court held that it was error for the trial court to refuse to allow the plaintiff to put up evidence as to such claims prayed for in the complaint. *Floyd v. First Union Nat. Bank*, 203 Ga. App. 788 (1) (417 SE2d 725) (1992). Thus, the language requiring punitive damages to be specifically prayed for in the complaint, as used under OCGA § 51-12-5.1 (d) (1), means that a request for punitive damages must be set forth in the prayer for relief, with which requirement appellee fully complied.

In a default judgment, the aggravating factors under OCGA § 51-12-5.1 (b) have been deemed admitted; therefore, it is for the trier of fact, the jury in the case sub judice, to determine specifically if such damages are appropriate and to decide within the limits of the act how much to award. OCGA § 51-12-5.1 (d) (2); see generally *Hill v. Johnson*, 210 Ga. App. 824, 825 (437 SE2d 801) (1993); see also *Chrysler Credit Corp. v. Brown*, 198 Ga. App. 653, 656-657 (3) (402 SE2d 753) (1991). After appellees presented evidence, appellant did not move for directed verdict or to strike the evidence based upon a failure to prove the aggravating circumstances by "clear and convincing evidence" under OCGA § 51-12-5.1 (b). Thus, appellant waived such higher standard of proof. *Hill v. Johnson*, supra at 825; see also *Shaw v. Ruiz*, 207 Ga. App. 299, 300-301 (428 SE2d 98) (1993).

Unlike *Clarke v. Cotton*, 263 Ga. 861 (440 SE2d 165) (1994), a case upon which appellant relies, appellant failed to object and to request that the jury be charged that the burden of proof is by clear and convincing evidence and that such standard be defined. Under OCGA § 51-12-5.1 (b), the "clear and convincing evidence" standard applies to proof that the "defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."

"[W]e pointed out that, in Georgia, the purpose of punitive dam-

ages is to deter the repetition of reprehensible conduct by the defendant. OCGA § [51-12-5.1]. Because deterrence is based on factors other than the actual harm caused, we rejected the notion that punitive damages must necessarily bear some relationship to the *actual* damages awarded by the jury. . . . The purpose of punitive damages, after all, is to deter such conduct. . . . Society's interest would seem better served by deterring objectionable conduct at the first opportunity so that the potentially greater injury which might otherwise be caused by such conduct might be avoided." (Footnotes omitted.) *Hosp. Auth. of Gwinnett County v. Jones*, 261 Ga. 613, 614-615 (1) (409 SE2d 501) (1991); see generally *Banks v. ICI Americas*, 266 Ga. 607, 610 (469 SE2d 171) (1996); *Mack Trucks v. Conkle*, 263 Ga. 539, 543 (2) (436 SE2d 635) (1993). Under OCGA § 51-12-5.1 (c), the statutory purpose is to "punish, penalize, or deter." *Banks v. ICI Americas*, supra at 610; *Stone Man v. Green*, 263 Ga. 470, 472 (1) (435 SE2d 205) (1993).

"Something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or malice, or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton. There is general agreement that, because it lacks this element, mere negligence is not enough, even though it is so extreme in degree as to be characterized as gross. Still less, of course, can such damages be charged against one who acts under an innocent mistake in engaging in conduct that nevertheless constitutes a tort." (Citations and punctuation omitted.) *Banks v. ICI Americas*, supra at 610 (3), quoting *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 121-122 (4) (365 SE2d 827) (1988).

When a party is in default on an intentional tort which falls within the ambit of OCGA § 51-12-5.1 (b), the elements of punitive damages that must be proven by "clear and convincing evidence" are deemed admitted. However, the trier of fact still must make a specific determination from such admitted facts and circumstances as to whether or not punitive damages are appropriate. See *Hill v. Johnson*, supra at 824-825; *Chrysler Credit Corp. v. Brown*, supra at 656-657. In the case sub judice, the jury, by their action in separately filling out the space on the verdict form for punitive damages and inserting a specific award for punitive damages, made a specific finding thereby that "an award of punitive damages shall be made"; the jury's actions satisfied OCGA § 51-12-5.1 (d) (1). Appellant failed to object at any time to such procedure or verdict form and waived any issue as to a procedure created for the defendant's protection. See *Hill v. Johnson*, supra at 825; *Shaw v. Ruiz*, supra at 300-301.

The admitted facts of the complaint showed "[t]here was no

harm with regard to punitive damages against [appellant] because the overwhelming [admissions in the default] showed a 'conscious indifference to consequences' on [its] part, more than meeting the clear and convincing standard of OCGA § 51-12-5.1 (b)." *Clarke v. Cotton*, supra at 862.

The provisions of OCGA § 51-12-5.1 set forth specific procedural requirements, i.e., that the standard of proof is clear and convincing evidence; that there must be a specific finding by the trier of fact of aggravating circumstances such as to warrant the imposition of punitive damages; and that there must be a bifurcation of the trial, with the trier of fact making findings of liability and as to some damages, *prior* to hearing evidence in aggravation. Such procedures are for the protection of the defendant and can be waived. However, nowhere in the record, either prior to the jury receiving the case or after the verdict was received but before the jury was dispersed, did counsel for appellant make any objection or motion before the trial court raising the issue of failure to follow the procedures of OCGA § 51-12-5.1. This enumeration of error was not raised at the trial and passed upon by the trial court in order to preserve it for appellate review. Thus, such issue was raised for the first time on appeal and is not appropriate for appellate review by this Court. Such issue is waived by failure to timely object. See *Hill v. Johnson*, supra at 825.

2. Appellant submitted no written request to charge on OCGA § 51-12-5.1. The trial court gave appellees' Request to Charge No. 5, which embodied OCGA § 51-12-5 and which deviated from the principles of OCGA § 51-12-5.1 in stating that punitive damages are both to *compensate for wounded feelings*, as well as to deter the wrongdoer. The rest of the charge included language present in both statutes.

"Assuming without deciding that it is always error for the trial court not to comply exactly with the requirements of OCGA § 51-12-5.1 in a default judgment action ([cit.]), we find the failure to do so in this case was harmless error." *Hill v. Johnson*, supra at 825. Appellant failed to show that the charge was harmful or to properly except to the charge as given so that the trial court could timely correct any harmful error. See *Johnson v. State*, 148 Ga. App. 702, 703 (2) (252 SE2d 205) (1979); see also *Smaha v. Moore*, 193 Ga. App. 23 (387 SE2d 13) (1989); *Stone v. Burell*, 161 Ga. App. 369 (2) (288 SE2d 636) (1982). The jury returned compensatory damages of $4,000 for expenses of litigation, $82,000 for pain and suffering, and $7,500 for loss of consortium, which fully compensated appellees' general and special damages; however, the jury returned more than one and one-half times that amount, $150,000, as additional damages to punish the appellant. There is nothing to indicate that the jury gave any of the punitive damages as compensation. Had the charge been given

that punitive damages are to penalize, to punish, and to deter the wrongdoer from repeating the wrongful conduct in the future, the outcome would have been the same. Obviously the jury was outraged at the appellant's conduct and lack of contrition.

3. Appellant's exception to Request to Charge No. 4 is based upon possible confusion to the jury with regard to pain and suffering and for loss of capacity to labor and earn money. However, the charge was a correct statement of the law. See *Williams v. Vinson*, 104 Ga. App. 886, 892-893 (6) (123 SE2d 281) (1961); *Langran v. Hodges*, 60 Ga. App. 567, 569-571 (3) (4 SE2d 489) (1939).

For reversal of a case based upon a jury charge or failure to charge, there must be a showing of harmful error, which causes such gross injustice that the question of whether the party has been deprived of a fair trial can fairly be raised. See *Greenhill v. State*, 199 Ga. App. 218, 222 (404 SE2d 577) (1991); *Wisenbaker v. Warren*, 196 Ga. App. 551, 555 (5) (396 SE2d 528) (1990); *Hamrick v. Wood*, 175 Ga. App. 67, 68 (2) (332 SE2d 367) (1985).

Moreover, appellant's exception to the charge did not set forth harmful error so that the trial court could correct any alleged error. The exception was so vague, indefinite, and lacking in specificity that it failed to point out any alleged error. Therefore, the exception was deficient. See *Smaha v. Moore*, supra; *Stone v. Burell*, supra; *McGaha v. Kwon*, 161 Ga. App. 216 (288 SE2d 289) (1982); *Jackson v. Meadows*, 157 Ga. App. 569 (278 SE2d 8) (1981).

DECIDED JULY 3, 1997 — 

*Sharon C. Barnes*, for appellant.
*Paris & Peterson, Richard J. Paris, Jr., Stephen D. Peterson*, for appellees.