RAY, Judge,
dissenting.
While I join in Judge Dillard’s dissent, I write additionally to address Goldstein, Garber & Salama, LLC (“GGS”)’s claim that it is entitled to a new trial because the jury’s apportionment of 100 percent of the liability to GGS is against the great weight of the evidence. Even if GGS could be liable on the grounds that the event was reasonably foreseeable, as the majority contends, at a minimum a new trial should be granted as the verdict assigning 100 percent of the fault to GGS is not supported by the evidence.
As has been sufficiently detailed by the majority, this case involves a dental practice, GGS, a highly anaesthetized patient, J. B., and a Certified Registered Nurse Anesthetist, Paul Serdula. During the surgery, GGS left J. B. alone with Serdula for some amount of time. While alone with the patient, Serdula molested J. B. and took videos of her private body parts. J. B. brought suit against both *438 Serdula and GGS, but later dismissed Serdula from the case. Nonetheless, GGS requested that Serdula be included on the verdict for apportionment purposes; however, after the jury found in favor of J. B., it apportioned 100 percent of the fault to GGS and nothing to Serdula, who had committed these vile acts.
The majority finds that the issue of apportionment is not properly before us as GGS waived the argument by failing to obtain a ruling on the issue. Generally, “our appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court.” (Citation omitted.) Heard v. City of Villa Rica, 306 Ga. App. 291, 293 (1) (701 SE2d 915) (2010).
The majority cites to Anthony v. Gator Cochran Constr., 288 Ga. 79 (702 SE2d 139) (2010), for the rule that a verdict must be upheld even if it is ambiguous as long as one of the constructions would uphold it. However, they ignore the actual holding of Anthony. In Anthony v. Gator Cochran Constr., 299 Ga. App. 126, 128-129 (2) (682 SE2d 140) (2009), this Court held that Anthony had waived any right to challenge the verdict by its failure to object to the verdict prior to the dismissal of the jury. There, we utilized the same words that the majority uses to defend their holding here.[41] See maj. op. at 425. On appeal, in a unanimous decision by our Supreme Court, the holding that Anthony had waived the right to challenge the verdict on the basis of it being void was reversed and remanded. In fact, our Supreme Court went as far as to overturn our cases to the extent that they “stand[ ] for the proposition that a party’s failure to object to a void verdict before the jury is dismissed will result in a valid judgment being entered on that verdict[.]” Anthony, 288 Ga. at 80.
This makes it clear to me that we do have the right to examine the verdict to determine whether it is void. A void verdict simply cannot stand. GGS did not waive the issue by failing to obtain a ruling on its objection. Contrary to the majority’s holding, it was perfectly acceptable for GGS to raise the issue just to put it on the record for purposes of appeal.
Even if the majority is correct in its assertion that GGS waived its objection, I believe the plain error doctrine would still allow us to review the error. In criminal cases, our Supreme Court has stated that “except in cases of plain error, enumerations of error not timely raised and/or argued shall be waived.” (Citation omitted.) Lynd v. *439 State, 262 Ga. 68, 60-61 (8) (414 SE2d 5) (1992). “Plain error is that which is so clearly erroneous as to result in a likelihood of a grave miscarriage of justice or which seriously affects the fairness, integrity or public reputation of a judicial proceeding.” (Citation and punctuation omitted.) Id. at 61 (8), n. 2. We have also applied this doctrine in civil cases, stating that under “exceptional circumstances appellate courts may, on their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.” (Citation and punctuation omitted.) Drug Emporium v. Peaks, 227 Ga. App. 121, 125 (2) (a) (488 SE2d 500) (1997). There are sufficient “exceptional circumstances” for us to review the verdict in light of the jury’s finding of no fault on the part of Serdula.
The responsible parties in this case were the molester, who is an intentional tortfeasor who committed a sexual assault, and the dental practice, an alleged negligent tortfeasor that put the molester in the position to harm the victim. Georgia law of comparative fault requires, upon proper request, that the factfinder allocate fault to all those responsible for the injury, whether they are litigants to the action or not. OCGA § 51-12-33 (b), (c). This required the jury to consider Serdula’s fault in assessing the liability against GGS, even though Serdula was not then still named as a defendant.
Astonishingly, the jury found that Serdula was not at fault at all for J. B.’s injuries, as it assessed 100 percent of the fault to GGS. The evidence at trial very clearly showed that Serdula acted intentionally. On three occasions, he waited until he was alone in the operating room with J. B. and used his phone to videotape himself acting inappropriately with her, essentially, unconscious body. He videotaped down her shirt, removed her underwear and videotaped her private area, and videotaped himself touching her face and mouth with his penis. There is absolutely no question that these were intentional acts, but yet, somehow, the jury found him zero percent at fault for her injuries. This situation most certainly presents circumstances mandating our consideration of the improper verdict due to obvious error. Drug Emporium, supra. Any verdict allowing this intentional tortfeasor to escape blame for his intentional tort simply cannot stand.
GGS argues that it is entitled to a new trial because the jury’s apportionment of 100 percent of the liability to GGS is against the great weight of the evidence. We have consistently held that
[n]o court except the trial court is vested with the authority to grant a new trial in a matter relating to the weight of the evidence. The appellate courts are not vested with discretion *440 in this regard as are the trial courts. Thus, the only query... is whether the evidence supported the verdict.
(Citations and punctuation omitted.) General Ins. Svcs. v. Marcola, 231 Ga. App. 144, 146 (2) (b) (497 SE2d 679) (1998). It is clear to me that the evidence here does not support the verdict. Although the jury could rationally have chosen to assign a lower percentage than 100 percent to Serdula, the evidence does not support a finding of zero percent fault.
A finding that Serdula did not contribute to J. B.’s injuries is wholly incomprehensible. A finding that Serdula was not at fault would logically be a finding that he did nothing wrong. If he did nothing wrong by molesting J. B., how then can GGS be liable for negligently placing him in the position to molest her? A finding of no fault on Serdula’s part would seemingly equate to a finding of no fault on GGS’s part.
The majority cites to Couch v. Red Roof Inns, 291 Ga. 369 (729 SE2d 378) (2012), for the proposition that whether “the [negligent tortfeasor] ... [can] establish evidence to support any rational basis for apportionment... is a question of fact not relevant to answering the legal questions set forth in this case.” Id. at 366 (1). In Couch, our Supreme Court also defined “fault” and “liable” as they are used in OCGA § 51-12-33. “[F]ault . . . refers to the degree to which each tortfeasor’s actions contributed to the damages.” Id. at 361 (1). “One is liable to a plaintiff if he or she is responsible or answerable in law.” (Citation and punctuation omitted.) Id. at 365 (2). Although J. B. dismissed Serdula from this suit, he most certainly would be answerable in law to her for her injuries. It is also clear that he contributed to her injuries. Therefore, he is both at fault and liable to her.
The majority sets forth two possible ways we could interpret the jury’s verdict. I believe either of those possibilities would render the verdict void. Our law demands that the jury apportion damages between the tortfeasors. Whether it did so with a “determination that GGS’s liability would not be offset on the basis of Serdula’s fault[,]” see maj. op. at 425, or that “after considering Serdula’s fault and adjusting its award in light of that fault, the jury intended to award J. B. $3,700,000 from GGS and that... it expressed that intent in a way that ensured the judge would not further reduce the award,” see maj. op. at 425, it did not properly apportion the fault between GGS and Serdula.
The root problem in this case comes from the fact that Georgia law allows the allocation of fault between an intentional actor and a negligent actor. Georgia law allows the trier of fact to assess percentages of fault to all parties responsible because of strong public policy *441 adopted by the legislature that a party should only be liable for the portion of harm that it personally caused. When an injury can be said to have been caused by multiple actors, we apportion the liability to the parties based on their individual portion of fault in causing the injury.
Decided November 20, 2015
Reconsideration denied December 16, 2015
Hawkins, Parnell, Thackston & Young, H. Lane Young, Matthew F. Barr, for appellant.
However, when we are dealing with an intentional tortfeasor and one who is merely negligent, apportionment does not work so well. Consider the inverse of this case. What if J. B. had sued GGS and Serdula, as she did, but prior to trial, she voluntarily dismissed GGS because the corporation was bankrupt? For the sake of argument, assume that Serdula was wealthy and had the means to pay any judgment. Would we want Serdula to be able to decrease his liability for the acts he intentionally performed by pointing to GGS and arguing that had it not put him in that position, he could not have performed the acts? The “I did it, but it is not fully my fault because they put me there” defense is, I believe, unconscionable; yet, our law enables and empowers such a defense. We should not want criminal defendants escaping civil liability because a negligent actor theoretically allowed them to be in that position.[42] Individuals who commit intentional acts should be held fully responsible for their acts, both in the criminal and the civil justice system.[43]
Our policy of only imposing liability on the party who caused the harm is very important. However, there are other ways of imposing liability on a negligent tortfeasor which operate in a cleaner fashion and avoid the situation which arose in this case.[44]
*442 Bird Law Group, William, Q. Bird; Shamp Speed Jordan Woodward, Jennifer A. Jordan; Houck Regas, Michael G. Regas, for appellee.

 The majority cites to Clifton v. Clifton, 249 Ga. 831, 832 (294 SE2d 518) (1982). In Anthony, we cited to Ford Motor Co. v. Tippins, 225 Ga. App. 128, 133 (5) (b) (483 SE2d 121) (1997). In Tippins, we cited to LaBanz v. Bank South, 198 Ga. App. 79, 82 (1) (400 SE2d 357) (1990), for the same quote. LaBanz, in turn, cited to Clifton for the same language.

 See In re E. C., 444 SW3d 760 (Texas Ct. App. 2014) (16-year-old who killed four people while driving drunk argued “affluenza” defense claiming that he was the product of wealthy privileged parents who never set limits for him).

 For alternative approaches to avoid the dilemma that is present in this case, see the Restatement Third of Torts, § 14, and the statutory scheme of the State of Florida, Fla. Stat. § 768.81 (4).

 See Ellen M. Bublick, The End Game of Tort Reform: Comparative Apportionment and Intentional Torts, 78 Notre Dame L. Rev. 355 (2003) (Detailed analysis of consequences of including intentional torts in comparative fault systems, as well as “guidance for courts and legislatures navigating the complex terrain of intentional and negligent fault comparisons”).