A92A0585. McLENDON et al. v. ALBANY WAREHOUSE COMPANY et al.

(418 SE2d 130)

BIRDSONG, Presiding Judge.

Appellants brought suit against appellees in Calhoun County seeking damages in a tort action averred to have occurred in said county, due to damage to a peanut crop allegedly caused by defective insecticide and herbicide purchased from appellees Helena and Albany Warehouse Company. The complaint averred that Helena was a foreign corporation, registered to do business in Georgia, with an office and place of business in Calhoun County. By way of responsive pleadings, Helena denied having an office and place of business in Calhoun County. Helena then filed a motion to dismiss or transfer because of improper venue. The trial court found that Helena did not have "an office and transact business in Calhoun County as contemplated in OCGA § 14-2-510 (3)"; the trial court transferred the case to the Dougherty Superior Court noting that Helena had an office and place of business there and that Albany Warehouse is a Dougherty County, Georgia, corporation. Appellants assert the trial court erred in finding Helena did not have an office and transact business in Calhoun County for purposes of establishing venue there, and that venue in Calhoun County was proper, based on *Scott v. Atlanta Dairies Co-op.*, 239 Ga. 721 (238 SE2d 340) and *Musgrove v. Kirksey Ford Sales*, 159 Ga. App. 276 (283 SE2d 292). *Held*:

1. OCGA § 14-2-510 (b), the appropriate venue statute pertinently provides: "For the purpose of determining venue, each domestic corporation and each foreign corporation authorized to transact business in this state shall be deemed to reside: (1) For purposes of proceedings generally, in the county where its registered office is maintained, or if the corporation fails to maintain a registered office, it shall be deemed to reside in the county in this state where its last named registered office or principal office, as shown by the records of

the Secretary of State, was maintained . . . (3) For purposes of proceedings for damages because of torts, wrong, or injury done, in the county where the cause of action originated, if the corporation has an office and transacts business in that county. . . ."

" 'A preliminary hearing over defenses of lack of jurisdiction over the person or subject matter and improper venue whether made in a pleading or by motion may be heard and determined before trial on the application of any party. [Cits.] At such hearing *factual issues* shall be determined by the trial court.' " (Emphasis supplied.) *Montgomery v. USS Agri-Chemical Div.*, 155 Ga. App. 189, 190 (1) (270 SE2d 362). Factual determinations of the trier of fact will be reversed only where the evidence demands a contrary finding, and when the trial judge conducts a hearing on a motion to dismiss or transfer for improper venue, his findings, as a trier of fact, are tested by the any evidence. rule. *Barrow v. Gen. Motors Corp.*, 172 Ga. App. 287, 288-289 (322 SE2d 900). In this case, the trial court did not enter separate findings of fact and conclusions of law, but did enter a mixed ruling of law and fact "that Helena Chemical Company does not have an office and transact business in Calhoun County as contemplated in OCGA § 14-2-510 (3)."

2. Appellees filed an affidavit of their corporate credit manager conceding Helena, a foreign corporation, was registered to transact business in Georgia with its registered agent located in Bibb County; denying that Helena had an office or place of business in Calhoun County; and, admitting that it does have a sales office located in Dougherty County and that the products purchased from Helena were obtained from that sales office. Further, the record reflects that Helena did not rent the building Mac Grain Company was using to warehouse Helena's chemicals in Calhoun County, had no sign displayed at that office, had no telephone listed under its name in Calhoun County, and had no permanent employees on said warehouse premises.

Helena entered into an agreement for certain Mac Grain services, captioned "Warehouse and Consigned Goods Agreement." Helena contends this agreement basically is an agreement for a line of credit. The agreement specifies that Mac Grain Company (therein referred to as Warehouse Company) was Helena's *agent* for purposes of delivering certain products to the persons designated by Helena, in the manner directed by Helena, and at a price established by current Helena price lists. The agreement also specified the manner and terms under which products could be delivered, and required Mac Grain to render certain periodic stock reports regarding deliveries made and information as to products sold and the balance of products on hand.

By way of deposition, Lester McNair testified he owns 100 percent of the stock in Mac Grain Company, also referred to as Ware-

house, where he warehouses chemicals for Helena. Helena puts its agricultural chemicals "in stock at [McNair's] place of business and [McNair has an] agreement with [Helena] where customers pick them up and they do the billing and all that kind of thing." Although McNair has a $200,000 line of credit with Helena, "you can put most of that [$200,000 worth of Helena Products] on a pickup truck," and the chemical inventory located at the warehouse is owned by Helena notwithstanding the credit line. When a Helena-approved credit customer obtains Helena chemicals from the Mac Grain Company, a Helena invoice is always used and McNair makes out the bill and the customer signs it. Mac Grain Company gets a check from Helena, although the individual employees of Mac Grain are paid by Mac Grain. Mac Grain is the lessee of the building used for warehousing chemicals. Helena runs an ad in the local papers, contemporaneously with the annual horse show, advertising "Helena Chemical Company with facilities at Mac Grain Company [located in Calhoun County] and Curry Farm Supply [located in Randolph County]." If there is an outstanding local account, Helena contacts McNair who does the collecting on behalf of Helena; McNair also makes occasional deliveries of chemicals to customers for Helena. Approved credit customers make payments for chemicals sold on credit both to McNair or to Helena; these checks are made out to Helena. A delivery truck from Helena, and bearing the Helena name, comes back and forth to Mac Grain daily and the checks are sent back with the driver. Once a month employees from Helena come to Mac Grain to inventory chemicals. Mac Grain is used as a "middle man" or as "the go-between, between Helena and the farmer." Except for McNair himself, who as sole owner of Mac Grain is compensated indirectly by Helena's payment of a percentage of the gross profits to Mac Grain, Helena has no employees who work steadily at the Mac Grain location. McNair gets all of the chemicals and some of the seeds Mac Grain sells from Helena. But Helena sells its goods to third persons who then obtain the goods from McNair. On limited occasion when someone has not been given a line of credit and has been placed on the Helena-approved customer credit list, McNair will of his own volition extend credit and sell Helena items to them. In these instances, it is McNair or Mac Grain who becomes directly responsible for paying these credit sales to Helena and not the customer. Helena does not pay rent on the building; however, it assumes responsibility to obtain insurance protection over the amount of $10,000 with Mac Grain obtaining the first $10,000 insurance protection. Although McNair has no authority to make expenditures for Helena without prior approval, he apparently can call and get approval when appropriate, such as to buy a hog for the market hog show. It is estimated that if Helena did not use Mac Grain's facilities its sales would be cut by approximately two-thirds in

that area. And in the spring of 1990, Helena had between $250,000-$500,000 in chemicals in the warehouse. McNair considers himself to be an agent of Helena, and this is not inconsistent with the "Warehouse and Consigned Goods Agreement" entered between the parties. McNair hosts some promotional meetings for Helena at the Mac Grain Company; however, the manufacturers and not Helena pay for these events. The Helena sales representative visits Mac Grain Company on his own volition for company purposes at least once a week and usually twice a week or more. In his supporting affidavit, McNair averred inter alia that he is a commissioned agent of Helena, has operated what is known as a depot or warehouse for Helena since 1985, and operated this facility at all times during the year 1990.

We find, contrary to Helena's contention, that this case is not controlled by *Barrow*, supra. In *Barrow* a significant factor was that the agreement did not make either party an agent or legal representative of the other *for any purpose whatsoever*. Id. at 288. In the case sub judice, the agreement expressly made Mac Grain an agent, at least for purposes as above discussed.

The term office as used in OCGA § 14-2-510 (b) includes any place where a particular kind of business is transacted or a service is supplied by a corporation, and an office can be operated without being open (and thus virtually being unknown) to the public. *Barrow*, supra at 288; *Musgrove*, supra at 277-278. In this regard, the agreement expressly provided that Mac Grain "shall perform certain *services* for Helena in accordance with the terms and for the consideration set forth herein." (Emphasis supplied.) And, the agreement thereafter provided for the appointment of Mac Grain as an agent of Helena to facilitate the accomplishment of certain of the specified *services*. Moreover, although Helena maintained a significant degree of control over its *agent* by the detailed instructions contained in the agreement, detailed billing procedures, sales representative visits, monthly inventory, and in retaining certain authority to approve expenditures by its agent, this degree of control is entirely consistent with the operation of an "office" within the meaning of *Scott*, supra, and *Musgrove*, supra.

Although the cases relied upon by appellants, *Scott*, supra, and *Musgrove*, supra, also have some dissimilarities of fact with this case, we nonetheless find the rationale therein persuasive; and, applying the standard of review in Division 1 above, we conclude that the evidence of record demands a contrary finding as to the mixed question of law and fact concerning the existence of venue. Compare *Chrysler Credit Corp. v. Brown*, 198 Ga. App. 653 (2) (402 SE2d 753). " "The mere fact that the corporation does not maintain an office in [Calhoun] County with a desk and an iron safe and other articles usually found in an office of that character is immaterial. Indeed, we are not

prepared to say that it would be necessary to have even a room in a house occupied by an agent of the corporation. If a corporation has a place where its business is being carried on, and has an agent in charge of it, performing such acts as are necessary in carrying on its business, it has an office and place of business within the meaning of the statute.'" *Musgrove*, supra at 278.

*Judgment reversed. Beasley and Andrews, JJ., concur.*

Decided April 8, 1992.

*Bowles & Bowles, Jesse G. Bowles III*, for appellants.

*Hall, Bloch, Garland & Meyer, Benjamin M. Garland, Landau, Davis & Farkas; Edmund A. Landau III*, for appellees.