A03A0962. HUDDLE HOUSE, INC. v. PARAGON FOODS, INC. et al.

(587 SE2d 845)

JOHNSON, Presiding Judge.

Paragon Foods, Inc. and its principal owners, Robert L. Newsome III and W. Clay Chester, sued Huddle House, Inc. in the Superior Court of Dougherty County for trespass, breach of contract, and tortious interference with contractual relations. Following our grant of its application for interlocutory appeal, Huddle House appeals the trial court's order denying in part its motion to transfer venue to DeKalb County. We reverse for the reasons set forth below.

Paragon entered into a franchise agreement with Huddle House for the operation of seven Huddle House restaurants in Georgia, including two restaurants in Dougherty County. In their August 3, 2001 complaint, Paragon, Newsome, and Chester (collectively, "Paragon") alleged that on August 1 and August 2, 2001, Huddle House sent its representatives to Paragon's franchise locations for the purpose of taking physical control of the premises. Paragon claimed that Huddle House padlocked doors, changed locks on doors, informed the employees that they no longer worked for Paragon, turned off grills, deep fryers, and other equipment, and required customers to leave the stores. On August 3, 2001, the trial court issued a temporary restraining order preventing Huddle House from taking control of the franchise locations.

Huddle House filed a motion to dismiss for improper venue, or in the alternative, to transfer the case to the Superior Court of DeKalb County. Huddle House also raised improper venue as an affirmative defense in its answer. After a hearing, the trial court ruled that the claims for breach of contract asserted in Counts 2 and 3 of the complaint must be made in DeKalb County Superior Court or the United States District Court for the Northern District of Georgia, as provided by the forum selection provisions of the franchise agreement. The trial court also ruled that the tort claims asserted in Count 1 of the complaint were not controlled by the forum selection provision of the franchise agreement and those claims were properly before the court.

> A preliminary hearing over defenses of lack of jurisdiction over the person or subject matter and improper venue whether made in a pleading or by motion may be heard and determined before trial . . . and when the trial judge conducts a hearing on a motion to dismiss or transfer for improper venue, his findings, as a trier of fact, are tested by the any evidence rule.[1]

1. Huddle House claims that the trial court erred in denying in part its motion to transfer venue because all of Paragon's claims were covered by the forum selection provisions in the franchise agreement. We disagree.

The franchise agreement between Paragon and Huddle House provides that venue for all "lawsuits relating to or arising out of this Agreement and related agreements" shall be in the state or superior court where Huddle House has its principal place of business, which is DeKalb County, or in the United States District Court for the Northern District of Georgia. In *Brinson v. Martin*,[2] which is relied upon by Huddle House, we held that in cases "where no Georgia law specifically governs venue, and where *more than one state and its citizens* are involved, [forum selection] clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[3] In this case, however, both Paragon and Huddle House are Georgia corporations[4] and all acts giving rise to the action were alleged to have occurred in Georgia. *Fidelity &c. Co. of Maryland v. Gainesville Iron Works*[5]

---

[1] (Citations, punctuation and emphasis omitted.) *McLendon v. Albany Warehouse Co.*, 203 Ga. App. 865, 866 (1) (418 SE2d 130) (1992).

[2] 220 Ga. App. 638 (469 SE2d 537) (1996).

[3] (Punctuation omitted; emphasis supplied.) Id. at 639 (1) (b).

[4] It appears that Newsome and Chester are also Georgia residents.

[5] 125 Ga. App. 829 (189 SE2d 130) (1972).

applies to this action because this is an intrastate conflict and there is an applicable Georgia statute, OCGA § 14-2-510, which governs venue.[6] In such a case, *Fidelity* holds that a contractual provision limiting venue is unenforceable against public policy.[7]

In arguing its motion to transfer venue before the trial court, Huddle House contended that the forum selection provisions of the franchise agreement required all claims to be transferred to DeKalb County. Paragon agreed with Huddle House as to the effect of the forum selection clause, but only insofar as the breach of contract claims. The trial court ordered that Paragon could not proceed with the breach of contract claims in Dougherty County, but could proceed with the tort claims in Dougherty County because they were unrelated to the breach of contract claims. Although we do not agree with the trial court's reasoning, we conclude that because the venue selection provisions were unenforceable the trial court did not err to the extent that it found those provisions did not apply to the tort claims.

2. Huddle House claims the trial court erred in finding that venue in Dougherty County was proper under OCGA § 14-2-510 (b) (3). We agree.

OCGA § 14-2-510 (b) (3) provides that a corporation is subject to venue, "[i]n actions for damages because of torts, wrong, or injury done, in the county where the cause of action originated, if the corporation has an office and transacts business in that county." For this purpose, an office is synonymous with a place of business.[8] The general counsel of Huddle House averred that Huddle House maintains no offices in the state other than its DeKalb County office.

The trial court ruled that although the franchise agreement purports to create an independent contract relationship and not an agency relationship,

> the [franchise agreement] give[s] Huddle House the right to not only limit the use of the trademarks, it gives defendant rights regarding site selection for the actual restaurants, it obligates Paragon to pay a weekly fee based on business volume, it gives Huddle House approval rights for all site plans, building specifications and leases, it gives Huddle House control over the purchase of all fixtures, furnishings and supplies, reserving the right to require Paragon to purchase food and supplies from Huddle House, it gives

---

[6] Compare *Harry S. Peterson Co. v. Nat. Union Fire Ins. Co.*, 209 Ga. App. 585, 591 (3) (434 SE2d 778) (1993) (enforcing contract forum selection clause does not offend the principles of *Fidelity*).

[7] *Fidelity*, supra at 830; *Regency Mall Assoc. v. G. W.'s Restaurant*, 213 Ga. App. 225 (444 SE2d 572) (1994).

[8] *Scott v. Atlanta Dairies Co-op.*, 239 Ga. 721-723 (1) (238 SE2d 340) (1977).

Huddle House oversight on repair issues, and gives Huddle House management rights in the event of incapacity. . . . In sum, the relationship between the parties gives defendant a great deal of input and control over the actual location and operation of the restaurants in question. The restaurants are marketed to the public as Huddle House restaurants and listed as same in the local telephone directory.

Although the trial court accurately describes the obligations imposed by the franchise agreement on Paragon, we disagree with the trial court's conclusion that these obligations show that Huddle House had established an office in Dougherty County. Because the record does not show that Huddle House employed anyone in Dougherty County, the trial court apparently found that Huddle House was conducting business in Dougherty County through Paragon as its agent. Where the question of agency rests upon a written document and inferences deduced therefrom, as in the instant case, the issue presented is a question of law.[9]

We have previously found that franchise agreements may permit the franchisor to exercise a degree of control over the franchisee in order to protect its trade and service marks without creating the relationship of principal and agent.[10] The franchise agreement at issue here did not make Paragon an agent of Huddle House. Rather, the franchise agreement established terms and conditions under which Paragon may be licensed to operate a restaurant using the name "Huddle House," and the rules and regulations impose various building and operational requirements, "not to permit [Huddle House] to direct or control the time, manner and method of performance of the daily operations of the franchise but as a means of achieving a level of quality and uniformity within its system."[11]

Authorities relied on by Paragon, such as *McLendon v. Albany*

---

[9] *McMullan v. Ga. Girl Fashions*, 180 Ga. App. 228, 229 (2) (348 SE2d 748) (1986).

[10] See *Anderson v. Turton Dev.*, 225 Ga. App. 270, 274-275 (2) (a) (483 SE2d 597) (1997) (franchisor's requirements that certain records be kept, prescribing the form of advertising, and mandating a specified number of rooms per hotel did not show an agency relationship); *Baldino's Giant Jersey Subs v. Taylor*, 216 Ga. App. 467 (454 SE2d 599) (1995) (test of agency is whether the contract gives the right to control the time and manner of executing the work, as distinguished from the right merely to require results in conformity to the contract); *McGuire v. Radisson Hotels Intl.*, 209 Ga. App. 740, 742 (1) (435 SE2d 51) (1993) (franchisor's operating standards were not to permit franchisor to direct or control the time, manner, and method of performance of the daily operations of the franchisee but as a means of achieving a certain level of quality and uniformity); *Frey v. Pepsico, Inc.*, 191 Ga. App. 585, 586 (1) (382 SE2d 648) (1989) (while franchisor retained a substantial amount of control over the franchisee's manufacturing and packaging operations, there is no suggestion that it retained or exercised any supervisory control over the hiring and firing of the franchisee's route salesmen or over the time, manner, and method of their performance).

[11] (Citation and punctuation omitted.) *Anderson*, supra.

*Warehouse Co.,*[12] *Chrysler Credit Corp. v. Brown,*[13] and *Musgrove v. Kirksey Ford Sales,*[14] are distinguishable because they involve the conduct of the principal's business through an agent. For instance, in *McLendon,*[15] the defendant Helena sold chemicals through its agent's warehouse in Calhoun County, and was accordingly found to have an office and be conducting business in Calhoun County for purposes of establishing venue.[16] Here, in contrast, Paragon cannot be shown to have conducted business on behalf of Huddle House.

Paragon further argues that if Huddle House had the right to seize the restaurants, then those restaurants must be business locations of Huddle House, and that if Huddle House did not have that right, then Huddle House was guilty of trespass. The latter half of this argument does not address the issue of venue. As to the first point, a contractual right to seize the property, if it did exist, would not establish that the seizing party was conducting business at that location before the property was seized.

For the foregoing reasons, we conclude that the trial court erred in finding that venue for this action could be established under OCGA § 14-2-510 (b) (3).

3. Paragon contends that the trial court, irrespective of its reasoning, reached the right result because Huddle House waived its right under OCGA § 14-2-510 (b) (4) to have the case removed. We disagree.

In pertinent part, OCGA § 14-2-510 (b) (4) provides that venue lies

> [i]n actions for damages because of torts, wrong, or injury done, in the county where the cause of action originated. If venue is based solely on this paragraph, the defendant shall have the right to remove the action to the county in Georgia where the defendant maintains its principal place of business. A notice of removal shall be filed within 45 days of service of the summons. Upon motion by the plaintiff filed within 45 days of the removal, the court to which the case is removed may remand the case to the original court if it finds that removal is improper under the provisions of this paragraph.

---

[12] Supra (warehouse agent sold principal's goods).

[13] 198 Ga. App. 653, 654-655 (2) (402 SE2d 753) (1991) (car dealer performed business functions for credit company).

[14] 159 Ga. App. 276, 277-278 (283 SE2d 292) (1981) (car dealer performed business functions for credit company).

[15] Supra.

[16] Id. at 868.

When Paragon argued below that Huddle House had waived the issue of venue as it relates to OCGA § 14-2-510 (b) (4), the trial court disagreed, ruling that "[t]he issue was timely raised here, thoroughly argued and briefed in this Court." Paragon nevertheless contends that OCGA § 14-2-510 (b) (4) places venue for this action within Dougherty County; that Huddle House was obligated to remove the case or venue remained in Dougherty County; that Huddle House failed to follow the procedures for removal; and that Huddle House has forever waived its right to remove the case to DeKalb County.

If venue was not "based solely" on OCGA § 14-2-510 (b) (4), Huddle House had no right to remove the case to DeKalb County.[17] It was not apparent at the outset of the case that venue was "based solely" on OCGA § 14-2-510 (b) (4). For one thing, there was an issue regarding whether venue was proper under OCGA § 14-2-510 (b) (3). When filed, the case also included claims for damages for breach of contract, which presented the question of whether the suit was at that time "an action for damages because of torts, wrong, or injury done." Only now does it appear that venue in Dougherty County for Paragon's remaining tort claims could be based solely on OCGA § 14-2-510 (b) (4).

Huddle House did not remove the case to DeKalb County. But Huddle House did file a motion in Dougherty County asking the trial court to transfer the case to DeKalb County within the 45-day period which would have otherwise been allowed for filing a notice of removal under OCGA § 14-2-510 (b) (4). Because Huddle House chose this approach, the venue issues were decided in Dougherty County, as opposed to DeKalb County, but the litigation of venue in Dougherty County was not prejudicial to Paragon. We conclude that under these circumstances, Huddle House preserved its right to remove the case under OCGA § 14-2-510 (b) (4) once it became clear that venue could only be maintained under that provision.

*Judgment reversed. Eldridge and Mikell, JJ., concur.*

DECIDED SEPTEMBER 25, 2003.

*Kilpatrick Stockton, Stephen E. Hudson,* for appellant.
*Langley & Lee, Carl R. Langley,* for appellees.

---

[17] See, e.g., *Mohawk Indus. v. Clark,* 259 Ga. App. 26, 28 (576 SE2d 16) (2002) (it was apparent that removal was improper because venue did not depend "solely" upon the location of the accident as required under OCGA § 14-2-510 (b) (4), and so case was returned to the court from which it was removed).